## RODRIGUEZ *against* HEFFERNAN and others.

*A.* and *B.* being concerned together in commercial adventures to *S. America, A.*, unknown to *B.*, who was abroad, assigned over the whole of a return cargo to *C.*, to secure the individual debt of *A.*, who was insolvent; and *C.* knew, at the time, there was a running account between *A.* and *B.*, arising from these mercantile adventures, though he was ignorant of the nature or extent of the transactions between them, or of the amount of interest, if any, of *B. Held*, that *C.* having sufficient notice of the rights of *B.* to put him on inquiry as to the extent of his interest, took the assignment subject to all the rights and equities of *B.*

A factor cannot pledge the goods of his principal, even though the creditor has no notice of his being a factor.

An assignee of one partner is entitled only to his share, after a settlement of the accounts of the partnership, and all the just claims of the co-partner are satisfied.

BILL, filed *February* 5th, 1820. It stated, that the plaintiff, *Vincente Rodriguez*, formerly of the province of *Carracas*, being in the city of *New-York*, in 1813, he, at the request of *H.*, became jointly interested with him, in an adventure from *New-York* to *Laguira*, by the schooner *Louisa*. (Captain *Esquiningo*.) That the vessel proceeded to *Laguira*, and after her cargo had been disposed of, and a return cargo laden on board, she was captured, on her return, by a *British* cruizer, and carried into *Halifax*, where the vessel and cargo were condemned. That the *United States* were then at war with *Great Britain*, and in order to protect the property and interest of *H.* from seizure, the adventure was conducted solely in the name of the plaintiff, who was a subject of the King of *Spain*. That the defendant *H.* was jointly and equally interested with the plaintiff in the adventure; that *H.* had received very considerable sums of money, arising from sales of parts of the outward cargo,

*May* 31st *and July* 30th.

at *Laguira*, and considerable sums in consequence of the decree of condemnation having been reversed, and for which he had not accounted to the plaintiff. That in 1816, *H.* purchased in his own name, but for the joint benefit of himself and the plaintiff, the brig *Active*, and has received considerable sums of money for her freight and earnings, for which he has not accounted to the plaintiff. That the plaintiff and *H.*, previous to the last of the year 1818, had various other dealings together, in which the plaintiff paid large sums of money to the defendant *H.*, and *H.* also received large sums of money on account of the plaintiff, and also, large quantities of goods belonging to the plaintiff, in whole or in part, and which were, afterwards, sold by the defendant *H.*, who converted the proceeds to his own use, and of which he has rendered no account to the plaintiff. That in *December*, 1818, the plaintiff caused to be laden on board the schooner *Good Hope*, then lying at *Porto Cabello*, in *S. America*, a cargo to the value of 15,000 dollars, belonging wholly to the plaintiff. That this schooner sailed from *Porto Cabello* for *New-York*, consigned to the defendant *H.* The plaintiff was then a naturalized citizen of the *United States*, but residing in the province of *Caraccas*, and well known to the owners of the patriot privateers; and to cover the property from loss by these privateers, it was agreed between the plaintiff and *H.*, that the cargo should be shipped in the name of *H.*, to whom the schooner belonged. The cargo was purchased with the money of the plaintiff, and wholly belonged to him; and *H.* was, at that time, indebted to the plaintiff, above 12,000 dollars. That the *Good Hope* arrived in *New-York*, in *February*, 1819; and *H.*, who had then stopped payment, took possession of the cargo, and assigned and delivered it to the defendants, *Gebhard* and *Beeckman*, as security for a debt, and they have since sold the cargo, and converted the same to their own use. That

at the time of the assignment by *H.* to them, *G.* and *B.* were informed, and knew, that the cargo belonged solely to the plaintiff. *H.*, at the same time, sold and conveyed to *G.* and *B.*, to secure a debt, the brig *Active,* of which he and the plaintiff were joint and equal owners ; and *G.* and *B.* knew, at the time, that one half of the brig belonged to the plaintiff; That the defendants refuse to render any account to him, &c. *Prayer,* for a true account of the cargo of the *Good Hope,* which has come to the possession of the defendants, and how they have disposed of the same ; and that they be decreed to account and pay the plaintiff the amount of the proceeds of the cargo, a nd for one half of the brig *Active ;* and for general relief.

The defendant *H.,* in his answer, admitted his concern with the plaintiff, in the adventure to *Laguira,* but he stated that part of the proceeds of the outward cargo, remaining after the purchase of the return cargo, was remitted to the plaintiff at *New-York,* in indigo, and the residue, if any, was never received by the defendant ; and he averred that he rendered to the plaintiff a true account of the adventure, and of what had been received, in *May* or *June,* 1819. He denied that he ever received any thing on account of the reversal of the decree of condemnation at *Halifax.* That in *August,* 1819, he received a letter from the agents in *London,* who had the management of the appeal, informing that thè cargo was restored on paying the captain's expenses, and that the whole sum decreed to be restored was consumed in costs. That the loss by reason of the capture, was 17,700 dollars and 98 cents, and the defendant rendered to the plaintiff a full account of the cargo so captured. That in 1816, this defendant purchased the brig *Active,* solely on his own account ; but having agreed to employ her as a trader, between *New-York* and *Laguira,* to carry cargoes on the joint account of the plaintiff and himself, he agreed that they should share the profit and loss of the brig, equally between them. That in 1819,

he rendered to the plaintiff, a just and true account of all the freight and earnings of the brig. That in 1818, the plaintiff and defendant, H., had other dealings together, and it was agreed that the plaintiff should have half of the profits of the joint adventures, and a commission of five per cent. on all sales, and four per cent. on all returns, and the half of the defendant's commission. That on the 4th of *November*, 1819, a general account current between the plaintiff and the defendant was stated, and a considerable balance found due to the defendant. He admitted that he made a shipment in *November*, 1818, on their joint account on board of the schooner *Good Hope*, to the amount of 6738 dollars and 41 cents, exclusive of freight, assigned to the plaintiff at *Porto Cabello ;* and a shipment of a return cargo by the plaintiff in the name of the defendant exclusively, for the reason stated in the bill, but on the like equal and joint account, amounting, according to the invoice, to 12,091 dollars and 73 cents. He denied that the return cargo belonged wholly to the plaintiff, or that it was purchased wholly with the moneys of the plaintiff; but he averred that it was purchased with the proceeds of the outward cargo and of prior shipments made on their joint account. That it was probable, that the defendant was, at that time, indebted to the plaintiff, but it was impossible to ascertain the amount, without a final settlement of their accounts. He admitted that he stopped payment on the 30th of *December*, 1818, a few days before the arrival of the return cargo, by the *Good Hope ;* and insisted, that he had a joint and equal interest in that cargo, and full power, by reason of that interest, and of a letter of attorney, to dispose of the whole cargo, *bona fide*, and to give the plaintiff credit in account, as he has done, for his share of the proceeds. That in *October*, 1818, he assigned property to the other defendants, G. and B., to secure loans and advances made by them to this defendant, to about 25,000 dollars, and which were afterwards increased to 45,000 dollars. That on the 27th of *November*, 1818, as further

1821.

RODRIGUEZ
v.
HEFFERNAN.

security, he assigned to *G.* and *B.* the outward cargo of the *Good Hope*, and two policies of insurance on vessel and cargo, and the vessel, and also the brig *Active.* That on the 26th of *December*, 1818, he sold and assigned to *G.* and *B.* the return cargo of the *Good Hope*, which two assignments were made upon the like trusts as the former assignments of property, that is, in trust, to pay *G.* and *B.* the amount due to them, or thereafter to become due, and their lawful commissions, and to account to *H.* for the surplus. That on the arrival of the *Good Hope*, in *January*, 1819, he endorsed the bills of lading and invoice of the cargo to *G.* and *B.*, who took possession of, and sold the cargo, and applied the net proceeds, amounting to 13,273 dollars and 65 cents, towards payment of the debt due to them from him ; and that he had credited in his account with the plaintiff, the sale of the return cargo, as being 10,722 dollars and 65 cents, after deducting the freight, to which the defendant was entitled, as the vessel wholly belonged to him. That *G.* and *B.* sold the brig *Active*, *April*, 1st, 1819, and applied the net proceeds, being 3,828 dollars, towards the payment of the debt due to them from *H.* That a large proportion of the advances to the defendant, and equal to the estimated convertible value of the return cargo of the *Good Hope*, and of the brig *Active*, was made by *G.* and *B.* on the faith of the security of the said cargo and brig, &c. That he presumed *B.* knew, or had reason to believe, that there was an open and running account between the plaintiff and the defendant *H.*, but *G.* and *B.*, or either of them, did not know, nor had reason to suspect, that the plaintiff and *H.* were jointly and equally interested in the return cargo of the *Good Hope*, or that the plaintiff had any interest in the brig *Active*, and which the defendant wholly denied. That the assignments to *G.* and *B.* were *bona fide.* That on the 22d of *May*, 1811, the plaintiff, by a letter of attorney, empowered the defendant to receive and discharge debts, to receive and dispose of

1821.

RODRIGUEZ
v.
HEFFERNAN.

goods of the plaintiff, and act fully, in all things, for him. The defendant averred, that he was authorized to dispose of the brig *Active*, as she belonged exclusively to him; and of the return cargo of the *Good Hope*, by reason of his interest therein, and of his power of attorney. That he is, and always has been, ready to render a true account, &c. That on the 7th of *January*, 1819,, he assigned to *W.* and *S. Craig*, for the benefit of his creditors, the surplus of the property assigned to *G.* and *B.*, after paying what was due to them. That on the 9th of *May*, 1821, having assigned all his property to *W.* and *S. C.*, he was duly discharged, under the act, &c., from liability to imprisonment, &c., and he objected that the assignees were not made parties to this suit.

The defendant *G.*, in his answer, averred that *H.*, being somewhat embarrassed in *October*, 1818, applied to the defendants *G.* and *B.* for aid, and promised to assign to them, as security, certain vessels and a cargo, as mentioned. That *B.* agreed, from friendship to *H.*, to advance him 25 or 30,000 dollars, and at various times during the period of one year after, they advanced to the defendant *H.*, in pursuance of the agreement, and on faith of the security, 47,000 dollars. The defendant then stated the property assigned to *G.* and and *B.*, as security for the advances, and particularly the brig *Active,* and the outward cargo of the *Good Hope*, on the 27th of *November*, and her return cargo, on the 26th of *December*, 1818, pursuant to the agreement above mentioned, and upon the same trusts; and that the invoice and bill of lading of the return cargo was endorsed to them in *January*, 1819. That the invoice was signed by the plaintiff, and recited that the return cargo was shipped by the plaintiff, on the account and risk of the defendant *H.*, and consigned to him. That *G.* and *B.* took possession of the return cargo, and sold it for the net sum of $13,272 65 cents and they also sold the brig *Active,* for 3803 dollars, and applied the same, as well as the proceeds of all the other property assigned to them, to satisfy the advances made by

them, and that a large balance still remained due to them. The answer denied all knowledge of any interest of the plaintiff, or of any other person, except *H.*, in the property so assigned and sold. It stated farther that the register, &c. of the brig *Active* was in the name of *H.* alone, and that *H.* always represented himself as sole owner of the brig and of the return cargo of the *Good Hope*, and that the greater part of the advances were made by *G.* and *B.* on the faith of that representation. The answer of *B.* was substantially the same as that of *G.* He admitted that he knew or had reason to believe that the plaintiff and *H.* had a running account between them, arising from mercantile adventures to *S. America*; but whether they were partnership transactions between them, or whether the plaintiff was merely the agent and factor of *H.*, or had any interest in the return cargo, &c., he did not know, until after the filing of the bill of the plaintiff. He admitted that, since the bill was filed, *H.* had informed him, that the plaintiff was jointly and equally interested in the return cargo of the *Good Hope.*

*May* 31*st.* The cause was brought to a hearing on the pleadings and proofs.

*D. B. Ogden* and *S. Jones,* for the plaintiffs. To show that a factor could not pledge the goods of his principal, whether the purchaser had notice or not, they cited, *Str.* 1178. 5 *Vesey,* 511. 2 *Mass. Rep.* 398. 1 *Maule & Selw.* 140. 480. 3 *Atk.* 144. 1 *Liverm. on Agency,* 129, 130. To show that one partner cannot bind his co-partner for any thing beyond the scope of the partnership, they cited, 4 *Johns. Rep.* 251. 262. *note.* 2 *Caines,* 246. 2 *Johns. Rep.* 300. *Watson on Part.* 180. 3 *Term. Rep.* 757. 1 *Salk.* 126. 1 *Lord Raym.* 175. 1 *East,* 49. 55. 6 *Vesey,* 604.

*P. A. Jay* and *T. A. Emmet,* for the defendant. They cited 1 *Maule & Selw.* 140. 146. 6 *East,* 19. 7 *East,* 210. 1 *Bos. and Pul.* 648. 1 *Rose's Bankrupt Cases,* 297. 9 *East,* 506.

*July* 30*th.* The cause stood over for consideration, until this day.

THE CHANCELLOR. The sole question in the case is, whether the defendants, *G.* and *B.*, are accountable to the plaintiffs for the proceeds which they have received of the return cargo of the schooner *Good Hope.* The defendants, *G.* and *B.*, claim those proceeds, (which amount, after deducting all charges, and the freight, to the net sum of 10,722 dollars and 65 cents,) by virtue of an assignment from the defendant *H.*, of the 26th of *December,* 1818, executed about the time the vessel sailed from *Porto Cabello,* in *South America,* for *New-York.* The plaintiff alleges, that the cargo was exclusively his property, though covered with the name of the defendant *H.*, in order to protect it from *Spanish* cruizers ; and the defendant *H.* admits, that the plaintiff had a joint and equal interest with him in that cargo.

The answers of the defendants, *G.* and *B.*, disclose the manner in which the assignment was taken, and the causes which led to it. They state, that in *October,* 1818, the defendant *H.*, being somewhat embarrassed in his pecuniary affairs, applied to them for assistance, and he promised to assign to them, by way of security for advances, certain vessels and cargoes, " as hereinafter mentioned." They accordingly did advance, as they say, " at various times, during the period of one year after the said agreement," 47,000 dollars, and upwards, and the defendant *H.*, in execution of that agreement, assigned to them, by deed of the 4th of *November,* 1818, and in trust, to secure the payment of 40,000 dollars, then already advanced, a vessel and two cargoes therein mentioned, and which form no part of the present controversy. The defendants, *G.* and *B.*, were to apply the proceeds to the payment of the moneys due, and to become due to them, and to re-assign, or account for the

surplus. On the 17th of *November*, the defendant *H.*, in further execution of the agreement, and for the more effectual security of *G.* and *B.*, assigned to them the brig *Active.* The property hitherto assigned, belonged to the defendant *H.* On this point, there is now no question between the parties; for a claim to a joint interest in the *Active*, was waived at the hearing. The next assignment was of the date of the 27th of *November*, 1818, and was given as a further security to *G.* and *B.* It assigned the outward cargo of the schooner *Good Hope*, then on a voyage from *New-York* to *Porto Cabello*, and which had been shipped on the 7th of *November*, together with the vessel, and the policies covering the vessel and cargo, and it was made upon the trusts expressed in the first assignment. Then followed the assignment of the return cargo, made on the back of the assignment of the 27th, dated on the 26th of *December*, 1818, and which was declared to be given for the purposes, and upon the trusts expressed in the other assignments.

This last assignment was evidently taken to secure *antecedent* advances. There is no evidence, that any advance or loan was made upon the credit of it. The defendant *H.* stopped payment, and consequently avowed himself a bankrupt, on the 30th of *December*, and only four days after, this assignment was made. It was taken from an insolvent debtor, on the eve of bankruptcy, as additional security for an existing debt, and ought to be subjected to all the strictness applicable to an instrument taken at such a crisis. It was not a security taken in pursuance of the original agreement, in *October*. That agreement related to certain vessels and cargoes "hereinafter mentioned;" but the defendants must be understood, by these words, to refer to the subjects specified in the first assignment, and not to the return cargo in this case, for the outward voyage itself had not then commenced. It is very probable, that the defendants *G.* and *B.*, from the knowledge which the defendant *B.* had of the mer-

cantile adventures of the defendant *H.* with *South America*, did not wish, or intend to meddle with that property, or it would have been included in the assignment of the 4th of *November.* The voyage was in contemplation by *H.*, as early as the 10th of *October*, and he had chartered the schooner *Good Hope* for that purpose, and the cargo must have been procured, and the voyage in full preparation on the 4th of *November.* By that time the defendants had advanced at least 40,000 dollars; and though the answers, with a want of precision that is very unusual in such a case, state that " at various times, during the period of one year," they advanced 47,000 dollars, yet it must all have been advanced between *October* and the 30th of *December*, 1818. We have seen that 40,000 dollars was due to them on the 4th of *November*, and we have no evidence that one cent was afterwards advanced. The reasonable inference is, that the whole advance was upon the credit of the property specified in the assignment of the 4th of *November*, and that the subsequent assignments of property of *doubtful title*, (for so the defendant *B.* must have regarded the mercantile adventure in question,) were taken under impression of the subsisting credit of *H.*, and for the purpose of adding further security to their former advances. There is no evidence, nor even an averment, that any advance was made on the credit of this return cargo, or on the strength of this assignment.

Are not these slight circumstances sufficient to protect the right and interest of the plaintiff in the return cargo, against that assignment? It was not a purchase by *G.* and *B.* in the ordinary course of commercial dealing, and the interest of *G.* and *B.* has no better pretensions, in this case, than that of the plaintiff, to protection. The defendant *B.*, admits, what may be deemed sufficient information of the plaintiff's right, at the time he took the last assignment, to have put him upon inquiry, and to charge both those partners with taking the assignment subject to those rights. He was acquainted with those circumstances, which

ought, in equity, and in fairness, to have led him to inquiry, and if he preferred to waive that inquiry, the assignment was taken *subject to the right of the plaintiff*. He says, that " he knew, or had reason to believe, that the plaintiff and *H.* had a running account between them, arising from mercantile adventures to *South America*, but whether the said adventures were partnership transactions between them, or whether the plaintiff acted merely as agent or factor for *H.*, and was to receive a certain fixed commission for his services, or whether, at the time the return cargo of the *Good Hope* was assigned to *G.* and *B.*, there was any thing due on the said account, or what interest the plaintiff had in the said return cargo, except in case the balance of the running account might be in his favour, the defendant did not know, nor was he informed." And if he knew that the plaintiff and the defendant *H.* had running accounts between them, arising *from mercantile adventures to South America*, and which alluded to the very voyage in question, and was uncertain whether the plaintiff and the defendant *H.* were partners, or what interest the plaintiff had in the return cargo, why did he not inquire ? Was it not his duty to have inquired of *H.*, who could have told him that they were jointly and equally interested in that very cargo, which he was then laying hold of as *tabula in naufragio*, to secure his former advances ? Was it dealing fairly with the rights of the plaintiff ? Lord *Hardwicke* observed, in *Smith* v. *Low*, (1 *Atk.* 490.) that whatever was sufficient to put the party upon inquiry, was good notice in equity. And we have the familiar case in the books,(*Moore* v. *Bennett*, 2 *Ch. Cas.* 246.) where a purchaser shall be charged with knowledge of a fact, provided he cannot make out a title but by a deed which leads him to that fact, for it was *crassa negligentia* that he sought not after it, and this is in law a notice. Chancery, says Lord *Bacon*, looks to the conscience of a party, if he will traffick for what in equity he knows to belong to another. The defendant *B.* had here reason to know, or believe, that the

return cargo belonged, in whole, or in part, to the plaintiff. He knew he was dealing for a subject in which the interest of the plaintiff was probably concerned, and that was sufficient to have prompted him to inquiry. He was bound, by the plainest principles of justice, to have called for explanations, and to have examined into the title of the plaintiff, before he took an assignment, for the purpose of excluding and barring his right. I have no hesitation in concluding, that the assignment in this case ought to be adjudged to have been taken, subject to the interest of the plaintiff, and the next and remaining inquiry is, as to the extent of that interest.

It was observed, upon the argument, that the plaintiff had held out to the world, the defendant *H.* as the real owner of this return cargo, and thereby enabled *H.* to practise a deception upon the public. If the defendants, *G.* and *B.*, could show that they had been the victims of this deception, they would have been entitled to have made the complaint. If the return cargo had arrived, and the letters of the plaintiff, and the invoice and bill of lading had been shown to these defendants, and trusting to them, they had made advances upon the credit of that cargo, to the defendant *H.*, they would have had a fair, equitable claim to protection. But the assignment, in this case, was taken a month before the return cargo had arrived, or the documents attending it had been seen, and they are not entitled to the benefit of any such defence. The defendant *H.* admits, that the return cargo was marked with his name, for the purpose stated in the bill, of protecting it from the depredations of the *Spanish* cruisers, hostile to the *Spanish* royalists, and he pretends only to a joint and equal interest with the plaintiff in that cargo.

If the plaintiff and *H.* were partners, then the interest of *H.* in that cargo, was his share in the surplus, subject to all partnership accounts, and the defendants, *G.* and *B.*, his assignees, are entitled only to his share, after a settlement of the accounts, and after all just claims of the plaintiff were

satisfied. (*Nicoll* v. *Mumford*, 4 *Johns. Ch. Rep.* 522.) As the defendants derive their title from *H.*, and as he has been extremely well disposed to promote their interest, in opposition to that of the plaintiffs, his admissions are good testimony against them, in respect to that title; and we are, at all events, to consider the plaintiff as jointly and equally concerned in the cargo. The only question now is, whether we are to consider him as a joint partner, as *H.* pretends, or as sole and exclusive owner of the entire return cargo, as he himself asserts. If the whole cargo belonged to him, then the assignment was the act of an agent or factor, pledging the goods of his principal for his own debt, and this the law will not permit. A factor may sell, out and out, in the way of business, and the sale will be binding; but he cannot pledge, even under the formality of a bill of parcels, and this was clearly such an act. It was an assignment to secure a debt, with a trust, to account for the surplus. It was, therefore, a mortgage, and not an absolute sale. It is an old settled and understood rule, that a factor cannot pledge, even though the creditor have no notice of his character as factor. In such a case, every creditor trusts and deals at his peril. (*Str.* 1178. 5 *Vesey*, 211.) No conclusion would appear more clear and inevitable, than that the plaintiff, in this case, is entitled, either as partner with *H.*, or as sole owner, to call the defendants *G.* and *B.* to account for the proceeds of the return cargo.

The evidence that the plaintiff was the sole owner of the return cargo, consists principally in the letters that passed between the plaintiff and *H.* It is evident, from the letters of the defendant *H.*, of the 5th of *June*, and of the 7th and 8th of *November*, 1818, that *Curriel* therein mentioned, was some assumed or fictitious name, and intended, the better to cover the property from depredation, to stand for the plaintiff. Then we have the declaration of the plaintiff, in his letter of the 20th of *December*, 1818, to *H.*, and which was produced on the part of the defendants, that *the greatest part of the return cargo was purchased with the money Mr. Cur-*

1821.

RODRIGUEZ
v.
HEFFERNAN.

A factor cannot pledge the goods of his principal: He can only sell them, out and out, in the way of his business.

*riel sent me*, or, in other words, with the plaintiff's own money. Here is, at least, sufficient ground for a reference to a master, to inquire and report what interest, if any, beyond or greater than a joint or equal interest, the plaintiff had in the return cargo, and to whatever extent that interest shall be duly ascertained, to that extent the defendants *G.* and *B.* *must be decreed to account.*

I shall, accordingly, declare, " that the defendants, *G.* and *B.*, took the assignment of the 26th of *December*, 1818, by way of security, and in trust, principally, if not entirely, for the purpose of securing the payment of advances antecedently made, and of debts antecedently incurred, and that the same was not a sale and purchase in the ordinary course of commercial dealing; and that the defendants, *G.* and *B.*, were, at the time they took the assignment, chargeable with sufficient notice of the rights of the plaintiff, to have put them upon inquiry as to the extent thereof, and to charge them with taking the assignment, subject to all the prior rights and equities of the plaintiff, and that as the plaintiff claims to have been the sole and entire owner of the return cargo in the assignment mentioned, and as the defendant *H.* admits the plaintiff to have been jointly and equally interested with him, and that it be referred to a master, to inquire and ascertain the extent and quantity of interest of the plaintiff, &c. and to report the amount, with the interest, if any, due thereon together with the amount of the net proceeds of the return cargo, received by the defendants, *G.* and *B.*, with interest thereon ; and that he call for papers, &c. and examine either of the parties, on oath, &c. and that the pleadings and exhibits in this cause, be received as proof before the master, together with such further proof as the parties may offer."

Decree accordingly.