DAVID Dows et al., Respondents, *v.* HENRY P. KIDDER et al., Appellants.

Plaintiffs contracted to sell to A. a quantity of corn to be paid for in cash on delivery. At the request of A. plaintiffs caused a portion of the corn to be loaded on board a vessel, for their account, and received the weigher's return, which they indorsed and delivered to A., to enable him to pro. cure bills of lading in his own name and to sell his exchange drawn against the same, it being agreed that the title of the corn should not pass until payment, which was to be made on that day. A. procured the bills of lading, which he transferred to defendants as security for three bills of exchange drawn against the corn, forming part of a parcel of exchange sold to defendants by A. Defendants paid to A. a portion of the proceeds of the exchange so purchased, and forwarded the three bills with the bills of lading to their correspondents. On the same day plaintiffs notified defendants that they were the owners of the corn, and demanded the same or the bills of lading, or that defendants should agree to account to them for the proceeds ; defendants refused. At that time they had in their hands of the purchase-price of the exchange more than the value of the corn. In an action for the conversion of the corn, the defense was that defendants bought and paid for the corn in good faith without notice; *held*, that no title to the corn passed from plaintiffs to A. ; that the condition precedent of payment was not waived by the symbolical delivery ; that as defendants, at the time of plaintiffs' demand, had sufficient means in their hands to protect both themselves and plaintiffs from loss, their refusal to comply was without justification ; that they were to be regarded as holding the proceeds in place of the property, and were liable to pay it over to plaintiffs as the rightful owners ; and that, by payment of a portion of the purchase-money before notice of plaintiffs' claim, defendants were entitled to protection as *bona fide* purchasers, only to the extent of such payment.

Also, *held*, that the fact that other moneys were mingled with the proceeds of plaintiffs' property did not impair their right.

Also, *held*, that the claim that the money in defendants' hands represented in part the price of bills of exchange drawn against other property as to which defendants were in the same position was not tenable ; that the question between the parties must stand as of the date when plaintiffs made their demand, and a payment then would have been good against every one, no demand by other claimants having then been made.

Also that such a claim was not within the issues but was inconsistent with the answer.

*It seems* that if defendants were likely to be vexed by conflicting claims, they had a remedy by action of interpleader, or might have had the other claimants brought in as parties to this action.

It was objected that if plaintiffs had a cause of action, it was not by action in the nature of trover. *Held*, that as no question of the kind was raised upon the trial, it was not tenable here.

*De Mott* v. *Starkey* (3 Barb. Ch. 403), *Weaver* v. *Barden* (49 N. Y. 286), *M. & T. Nat. Bank* v. *Crow* (60 id. 85), distinguished.

(Argued December 17, 1880 ; decided February 11, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 2, 1879, affirming a judgment in favor of plaintiff, entered upon the report of ·a referee.

This action was brought to recover damages for the alleged conversion of a quantity of corn. The answer alleged in substance that defendants purchased of one Atkinson, in the usual course of business, sixteen bills of exchange, and among them three bills of exchange drawn against the corn then shipped on board a vessel, receiving the bills of lading therefor as collateral, and that defendants paid for said bills of exchange in good faith, before notice of plaintiffs' claim.

The facts found by the referee are substantially as follows :

On the 24th day of July, 1876, plaintiffs agreed to sell to Thomas Atkinson, doing business under the name of Thomas Atkinson & Co., and said Atkinson agreed to buy 50,000 bushels of corn, to be delivered during the first half of August to buyer's vessel or store, payment to be made in cash on delivery. On the 10th and 11th days of August, 1876, on request of said Atkinson, ·plaintiffs caused 24,869$\frac{3}{5}\frac{2}{6}$ bushels of the corn, to be delivered on board the bark "Emilio Ciampa," then being at Brooklyn, in the port of New York, and bound to Cork for orders ; said corn was put on board, for account and to ·be held for account of plaintiffs ; plaintiffs, as owners ·of said corn, according to the usual course of business, received the return of the official weigher dated August 11th, showing the delivery of the said quantity of corn on board ; the price of said corn at the sale agreed on, with customary proportion of expenses, amounted to $13,802.61, for which a bill was rendered at the time of the delivery of the weigher's return for payment to be made in cash. On the 12th day of August

plaintiffs made a conditional delivery of said corn to Atkinson by delivering to him the weigher's return indorsed by plaintiffs, the condition of such delivery being by standing agreement between Atkinson and plaintiffs that the title to said corn should not pass until the payment of the price, in cash, which agreement was supplemented by a special promise at the time of delivery to give a check for the amount of the bill at two o'clock of the same day. The title papers for said corn were indorsed by plaintiffs and delivered to Atkinson for the purpose of enabling him to procure bills of lading, in his own name, and to prepare and sell his exchange drawn against the same. A check for the price of said corn was demanded by plaintiffs of Atkinson on the same day and was refused, and thereupon the return of the corn or of the bills of lading therefor was also demanded of said Atkinson and refused. Atkinson, on the same day, failed and made a general assignment for the benefit of his creditors. Atkinson, by means of the said weigher's certificate, so indorsed to him by plaintiffs, procured from the master of said bark bills of lading for the corn, three in number, in the name of Thomas Atkinson & Co., as shippers, and on the same day transferred the same to defendants, as security for three bills of exchange for £2,050 sterling, drawn by said Thomas Atkinson & Co., against said corn, and forming part of a parcel of exchange amounting to £6,725 sterling that day, sold to defendants by Atkinson at the aggregate price of $36,331.81. Defendants paid to Atkinson, on account of said purchase, $17,000. By the mail which closed at half-past one of that day defendants forwarded the bills of exchange and bills of lading, with suitable indorsement or other transfer to their agents or correspondents in London. Afterward, on the same day, plaintiffs notified defendants that they were the owners of the corn, and demanded the same, or the bills of lading therefor, or that defendants should agree to account to plaintiffs for the value or the proceeds thereof. At the time of such demand defendants had in their own hands, of the price of the said exchange, more than $19,000, being much more than the whole value of the said corn. Defend-

ants neglected and refused to comply with any of the said demands. At the time of the said purchase and of their receiving the bills of exchange and bills of lading, defendants had no notice of the insolvency of Atkinson, and had no notice or reason to suspect that he was not acting in his own behalf and in entire good faith, and had no notice or reason to suspect that plaintiffs had any interest in or claim upon said corn, or any part thereof.

Upon the request of counsel for the defendants the referee further found, among other things —

" That Atkinson delivered to defendants with such exchange all the bills of lading for said merchandise, including the bills of lading for the corn, and usual documents, except certain bills of lading representing bacon, and requested a check for $17,000 on account of the transaction, which defendants gave him.

" That soon thereafter the bills of lading for the bacon were delivered to defendants, and the transaction between defendants and Atkinson was completed on Atkinson's part.

" That, to complete the sale and purchase of the exchange, there remained to be paid by defendants to Atkinson the sum of $19,331.81, balance of the price of the exchange.

" That about two P. M. the same day, Atkinson called at defendants' office, and then received their check for said balance, $19,331.81, which he immediately indorsed and handed back to defendants, requesting that it be passed to his credit, as additional margin, to protect defendants from losses likely to occur on prior transactions, and defendants received the said check so indorsed and passed the amount to Atkinson's credit, as requested.

" That at the time when defendants so gave and received back the said check, they had no knowledge or notice of any claim, on the part of plaintiffs, to the corn in question.

" That thereafter plaintiffs demanded of defendants the corn in question, or its value, and defendants refused to comply with the demand.

" That thereafter, namely, August 15, and on August 22,

similar demands were made upon defendants by other credit-
ors of Atkinson, for other merchandise purporting to have
been represented by bills of lading accompanying the ex-
change, sold by Atkinson to defendants, as aforesaid, which
demands amounted to $11,779.64."

On request of plaintiffs' counsel, the referee further found—

"That plaintiffs' demand was renewed on Monday, August
14, and that the defendants were willing, and offered to pay
to plaintiffs the price of the exchange drawn against the corn,
if Atkinson would consent; that Atkinson refused to consent,
and thereupon defendants refused to pay to plaintiffs the price
of such exchange, and retained possession of the corn without
agreeing to account for the same to plaintiffs."

*E. T. Rice* for appellants. Although the sale of the corn
was a cash sale, delivery was made without requiring payment,
and the defendants acquired a good title discharged of the lien
for the purchase-money. (*Rawles* v. *Deshler*, 3 Keyes, 572;
*Comer* v. *Cunningham*, 77 N. Y. 391; *Fitzgerald* v. *Fuller*,
19 Hun, 180; *Parker* v. *Baxter*, id. 410; 1 R. S., marg. 774,
§ 3.) The defendants' exception to the referee's conclusion of
law, that they had not paid Atkinson for the corn, nor
for the exchange drawn against it, nor for any part thereof,
was well taken. (*Winne* v. *McDonald*, 39 N. Y. 233.) The
conclusion of law of the referee, that defendants had no greater
equities against plaintiffs than Atkinson had, was erroneous.
(*The President, etc., of Westfield Bk.* v. *Corning.* 31 N. Y.
320; *Root* v. *French*, 13 Wend. 570; *Rawles* v. *Deshler, supra;*
*Exchange Bk.* v. *Monteath*, 26 N. Y. 505, 513.) By the pay-
ment of part of the purchase-money for the exchange before
notice of plaintiffs' claim the defendants were entitled to pro-
tection as *bona fide* purchasers. (*De Mott* v. *Starkey*, 3 Barb.
Ch. 403, 406; *Weaver* v. *Bardin*, 49 N. Y. 286, 291; *Mech. &*
*Traders' Bk.* v. *Crow*, 60 id. 85.) In the absence of fraud or
collusion on the part of defendants with Atkinson, defendants
had a right to complete their purchase of the exchange by pay-
ing Atkinson the balance due him for the exchange without im-

pairing their security. (*Lickbarrow* v. *Mason*, 1 Smith's L. Cas. 1039 [marg p. 848]; *Marine Bk.* v. *Wright*, 48 N. Y. 1.) Whether the sale and delivery were induced by fraud or not on Atkinson's part makes no difference with regard to defendants' title, because the property had been delivered to Atkinson voluntarily and in pursuance of an actual sale made some weeks before, and the defendants had in good faith advanced money upon the credit of the property. (*Paddon* v. *Taylor*, 44 N. Y. 371.) The power given by the vendors (plaintiffs) to the vendee (Atkinson), and exercised by him in the sale of the exchange to defendants, on security of the corn, was inconsistent with continued ownership of the corn by plaintiffs, and estopped them from reclaiming the property from defendants. (*Ludden* v. *Hazen*, 31 Barb. 650; *Smith* v. *Lynes*, 1 Seld. 41; *Paddon* v. *Taylor*, 44 N. Y. 371.) To render a demand and refusal equivalent to direct proof of conversion, it should appear that defendants were in actual possession of the property at the time of demand or had previously parted with the goods fraudulently, or had wrongfully converted them to their own use. (*Andrews* v. *Shattuck*, 32 Barb. 396.)

*C. Van Santvoord* for respondents. Where a delivery on a sale for cash is made before payment, conditionally or upon a trust, the vendor may reclaim the property against the vendee, or any transferee of his who has not made advances of money on the faith thereof as a *bona fide* purchaser. (*Dows* v. *Dennistoun*, 28 Barb. 393; *Fleeman* v. *McKean*, 25 id. 479.) Upon a sale of goods for cash to be paid on delivery, the title does not vest in the purchaser upon actual delivery without payment, unless the condition is waived. (*Smith* v. *Lynes*, 5 N. Y. 41; reversing 3 Sandf. 203; *Strong* v. *Taylor*, 2 Hill, 326; *Fleeman* v. *McKean*, 25 Barb. 474.) A delivery of property on condition that title shall not pass unless the price is paid at a set time, and that if it is not, the seller may resume possession, does not transfer the title. (*Herring* v. *Hoppock*, 15 N. Y. 409; affirming 3 Duer, 20; 12 N. Y. Leg. Obs. 167; *Herring* v. *Willard*, 2 Sandf. 418; *Piser* v. *Stearns*, 1 Hilt. 86.)

Delivery of goods sold for cash is not necessarily a waiver of the condition. The seller has a right to explain the delivery by evidence. (*Fleeman* v. *McKean*, 25 Barb. 474.) It is not necessary to a qualified or conditional delivery that the qualification or condition intended to be annexed to the delivery should at the time be declared by the vendor in express terms. (*Smith* v. *Lynes, supra; Buck* v. *Grimshaw*, 1 Edw. 140; *Keeler* v. *Field*, 1 Paige, 312; *Haggerty* v. *Duane*, id. 321; *Van Nest* v. *Conover*, 8 Barb. 509; *Leven* v. *Smith*, 1 Den. 571; *Haye* v. *Currie*, 3 Sandf. Ch. 585; *Root* v. *French*, 13 Wend. 570; *Barnard* v. *Campbell*, 55 N. Y. 456; 58 id. 73; *Bassett* v. *Spofford*, 45 id. 387, 391.) Conditions as to title follow a delivery to a purchaser, and will be enforced even against a *bona fide* purchaser parting with value. (*Dows* v. *Nat. Bk. of Milwaukee*, 1 Otto, 618; *The F. & M. Nat. Bk. of Buffalo* v. *Hazeltine*, 78 N. Y. 104.) To constitute one a *bona fide* purchaser, within the rule for the protection of a *bona fide* purchaser against a prior equity, the conveyance must be executed and the purchase-money actually paid before notice. (*Dows* v. *Dennistoun, supra; Basset* v. *Norworthy*, 2 W. & T. L. Cases [5th ed.], Lond. 1877, p. 6; Sugden on Vendors [14th ed. by Sugd.]; 8th Am. by J. C. Perkins, Phil. 1873, vol. 2, 522, 523 [752, 753]; *Heatley* v. *Finster*, 2 Johns. Ch. 159; *Jewett* v. *Palmer*, 7 id. 65, 68; *Clark* v. *Mauran*, 3 Paige, 373.)

DANFORTH, J. Upon the facts found by the referee it is plain that no title to the corn passed from the plaintiffs to Atkinson or to Atkinson & Co. There was an agreement to sell, but payment was to be made in cash upon delivery. Payment was thus made a condition precedent, and until the condition was performed the title could not be affected. (*Russell* v. *Minor*, 22 Wend. 662; *Leven* v. *Smith*, 1 Den. 571; *Fleeman* v. *McKean*, 25 Barb. 479; *Dows* v. *Dennistoun*, 28 id. 393.) Nor was this condition waived by the symbolical delivery of the corn to Atkinson by putting in his hands the title papers therefor, for this was also done upon condition that the title should not pass until payment of the price in cash. (*Cor-*

*lies* v. *Gardner*, 2 Hall, 374 ; *Hammett* v. *Linneman*, 48 N. Y. 399; *Herring* v. *Hoppock*, 15 id. 409 ; *Cole* v. *Mann*, 62 id. 4.) But as Atkinson was thus enabled by the plaintiffs to assume possession and the apparent ownership of the corn, third persons had a right to consider it as his, and the plaintiffs are estopped as against any one who, without notice that the condition had not been performed, made advances thereon as pledgee or purchaser in the belief that the apparent title was the real title and the ownership absolute. (*Saltus* v. *Everett*, 20 Wend. 267 ; *Smith* v. *Lynes*, 5 N. Y. 41; *Paddon* v. *Taylor*, 44 id. 371; *Comer* v. *Cunningham*, 77 id. 391.)

The defendants claim to be in that position. By the answer in this action they allege that on the 12th day of August, 1876, they bought of Atkinson, in the usual course of business, sixteen bills of exchange drawn by him against merchandise of various kinds and among others, three bills of exchange drawn against corn then on shipboard, and received therewith bills of lading representing the said corn as collateral security for said bills of exchange ; that they took these bills in good faith and paid therefor, without notice of " or reason to suspect that the plaintiffs had any interest in or claim upon said corn or any part thereof." And except the fact of payment, this claim may also stand upon the findings of the referee. As to that, he finds the aggregate amount of exchange so purchased was £6,725 ; that the three bills drawn against the corn amounted to £2,050, and form part of the £6,725, and for this the whole price to be paid was $36,331.81 ; that on account of said purchase " the defendants paid to Atkinson $17,000 and no more " ; that afterward and on the same day, the plaintiffs notified the defendants that they were the owners of the corn, and demanded the same or the bills of lading therefor, or that defendants should agree to account to plaintiffs for the value or the proceeds thereof; that the value of the corn was $13,802.61, and that at the time of this demand there remained in the defendants' hands of the price of said bills of exchange more than $19,000 ; and that the defendants refused to comply with either of the plaintiffs' demands. At this time also, although the corn had been shipped, the

vessel was still in port, and the bills of lading were under the control of the defendants, for they had but a few hours before been mailed by them to their agents and correspondents; and therefore to the extent of the unpaid portion of the price agreed to be paid for the bills of exchange, the defendants had in their possession sufficient means of protecting not only themselves but the plaintiffs from loss, and their refusal to comply with the plaintiffs' demand seems to be without excuse or justification within the rule relied upon. They stand on Atkinson's title as to the money in their hands, and seek to retain that which he was bound to pay over before his title could be perfected.

The corn when shipped was put on board the vessel "for account and to be held for account of plaintiffs." The weigher's return, showing the quantity of the corn and its delivery upon the vessel, was transferred by the plaintiffs to Atkinson, not only upon the condition before stated, but for the purpose of enabling him to procure bills of lading for the same, "and to prepare and sell his exchange drawn against" it, and the proceeds to the amount of the price of the corn were to be thereupon paid to the plaintiffs. These things were accomplished. The bill of lading was transferred by Atkinson to the defendants as security for the bills drawn by him. The defendants bought this with other exchange, and at the time of the demand had not paid him therefor. So far as the money in their hands is made up in any part from the proceeds of the plaintiffs' corn, I am unable to see how the position of the defendants is better than Atkinson's. So far as it contains the price, or any part of the price, which the defendants agreed to pay Atkinson for the bills of exchange, or so far as it is money agreed to be advanced upon the strength of the security afforded by the bills of lading written for the plaintiffs' corn, how is the defendants' title better than that of Atkinson's? To that extent, in whichever of these ways arising, it is the proceeds of the plaintiffs' property. As such it could be followed if it remained in Atkinson's hands, and there is no reason, in right or justice, why it should not in like manner be

taken from those of the defendants.   So long as the money is in their hands, it does not matter that the property was received from Atkinson without notice of the plaintiffs' claim or equity.   The proceeds of the plaintiffs' property belong to them.   Atkinson may be considered as the plaintiffs' trustee or agent, for the purpose of disposing of the property and procuring the advances; and in either view, the plaintiffs, as principals, or as *cestuis que trust*, would be entitled to the price, or the money agreed to be advanced.   (*Scott* v. *Surman*, Willes, 407; *Rodriguez* v. *Heffernan*, 5 Johns. Ch. 430; *Taintor* v. *Prendergast*, 3 Hill, 72; *Lamine* v. *Dorrell*, 2 Ld. Raym. 1216; *Kelley* v. *Munson*, 7 Mass. 319; *Sheffer* v. *Montgomery*, 65 Penn. St. 329; *F. & M. Nat. Bk.* v. *King*, 57 id. 202; *Lemcke* v. *Booth*, 47 Mo. 385.)   The trust is implied *in invitum*, or is "forced upon the conscience" by mere operation of law (2 Story's Eq. Jur., § 1254), for the reason that the defendants have money in their hands which they cannot conscientiously withhold.   (Com. Dig., Chap. 2 A. 1; id. 4 W. 5.)   It cannot be doubted that if the corn had come into the defendants' hands with notice of the condition on which Atkinson held it, they would be bound to perform it, or hold the property subject to the condition, as Atkinson held it.   The same principle which requires this subjects the defendants to the rights of the plaintiffs, as the true owners of the property to its proceeds; and the fund in the defendants' hands is in like manner liable to the rights of the plaintiffs, in the same degree as if it was in the hands of Atkinson.   Its conversion into money, or into any other kind of property, can make no difference with the plaintiffs' rights or the defendants' liability, either at law or in equity. (Story's Eq. Jur., *ante*, §§ 1255, 1256, 1257, 1258.)   Judge STORY there declares the general proposition, "that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right (not being *bona fide* purchasers for a valuable consideration without notice), any more valid

claim in respect to it than they respectively had before such change." *Scott* v. *Surman* (Willes, 407) was an action against the assignees of a factor who had sold goods contrary to directions; and the court say: "A man may in many cases consider another as a wrong-doer or as a receiver of money to his use, as he thinks best and most for his advantage," and " the owner may come either against the vendee or the factor at his election; and the plaintiffs by this action have chosen to confirm the sale." In *Merrill* v. *The Bank of Norfolk* (19 Pick. 32), the plaintiff had sent to one Lamson, a broker, a quantity of lumber for sale; in part payment the broker took a note, procured it to be discounted by the defendant and the proceeds placed to his credit; afterward and on the same day the proceeds were attached by creditors of Lamson, and the plaintiff after demand brought an action against the bank for the amount of the note. The defendant set up the attachment, but the plaintiff recovered. The court say: "Giving credit for the proceeds to the factor did not divest the plaintiff of his property. It did not amount to payment; and nothing short of payment, either to the plaintiff or his agent, would discharge the defendants from their liability. The plaintiff may follow the property, however it may change form, or in whosesoever hands it may be found, until his rights be divested by his own act or authority. The defendants having the plaintiffs' money in their hands, for which a demand was made before the action was commenced, are liable for the amount." In like manner, in the case before us, the defendants must be regarded as holding the proceeds in place of the property, and therefore liable to pay them over to the plaintiffs as the rightful owners, and this conclusion is sustained by the principle declared in *Van Alen* v. *Am. Nat. Bank* (52 N. Y. 1), to be well settled,that so long as money or property belonging to the principal, or the proceeds thereof, may be traced or distinguished in the hands of the agent or his representatives or assignees, the principal is entitled to recover it unless it has been transferred for value without notice; and the case itself sustains the doctrine. To the same effect are *U. S.* v. *State Bank* (96

U. S. 30); *Caussidiere* v. *Beers* (2 Keyes, 198); *Cobb* v. *Dows* (10 N. Y. 341). Nor does the fact that other moneys are mingled with the proceeds of the plaintiffs' property impair their right. *Van Alen's* case is to that effect, and so are many cases therein referred to or cited. In one of them (*Pennell* v. *Deffell*, 4 De G. M. & G. 372), the court say: "It may indeed increase the difficulty of ascertaining what belongs to the trust, but I can see no possible ground on which it can affect the principle." No such difficulty was suggested by the defendants. Upon demand made they not only refused to return the bills of lading or corn, but even to account for its value or the proceeds thereof. The plaintiffs' rights are denied, and it may be said here, as was said by the late chief judge in *Van Alen's* case, *supra :* "The defendant occupies the position of objecting to the title of the plaintiff without having or claiming any title itself." Indeed a further finding of the referee shows that when on a subsequent day the demand was renewed, "the defendants offered to pay the price of the exchange drawn against the corn, if Atkinson would consent; that he refused to consent, and they thereupon refused to pay the price of the exchange, and retained possession of the corn without agreeing to account for the same to the plaintiffs." It is apparent that with notice of the plaintiffs' rights and power, without injury to themselves to respond thereto, they put their refusal only on the ground of Atkinson's refusal. That does not justify them. They withheld it after notice of the trust, and cannot stand on this refusal, without showing that Atkinson had a right to make it. This they have not done. The money was at first in their hands as the money of Atkinson. They may be regarded as his bankers; and so far as they paid it out without notice that it did not belong to him, or that others were entitled to it, they are to be protected. (*School Dist.* v. *First Nat. Bank*, 102 Mass. 174, and cases *infra.*) This would apply to the $17,000 paid upon his check. But the sum remaining may be followed by the true owner. (2 Story's Eq. Jur., § 1258; *Pennell* v. *Deffell, supra ; Ex parte Cooke*, L. R., 4 Ch. Div. 123; *F. & M. Nat. Bank* v. *King*, 57 Penn. St.

202.) In the case last cited it was held, that when a principal can show that the money had been placed in the hands of another by his agent, it is no objection to the owner's claim that the other has promised to pay the agent; it would follow that the refusal of the agent to consent to payment to the principal would be no protection to the holder of the money against a claim made by the real owner. Atkinson acquired no rights by his abuse of trust, and could confer none upon the defendants, except as they became *bona fide* purchasers for value and without notice. This was not the defendants' relation to the $19,000.

Upon the same facts it follows that the principle relied upon by the learned counsel for the appellants, viz., that when one of two innocent persons must lose by the act of a third, the loss should fall on the one through whose trust or confidence the wrong was committed, has no application to this case, for neither of the parties need suffer any loss. The defendants have in their hands money which they have no right to retain. They must pay it over to some one — either to Atkinson, or his representatives, or the plaintiffs. Atkinson could not complain that it was paid to the plaintiffs; nor could the defendants be required to pay it to him again.

But it is said that this money represents, in part, the price of bills of exchange drawn against other property; and that "the defendants are in the same position as to all the exchange and all the merchandise." The force of this objection, however, is not apparent. The defendants were not called upon to decide between conflicting claimants to this money. The plaintiffs gave notice of their rights and made their demand on the twelfth day of August; and the question between them and the defendants must stand as of that time. A payment then would have been good against every one. It is true that the referee, at the request of the defendants' counsel, found that afterward, viz., on the fifteenth and twenty-second of August, similar demands, amounting to $11,779.64, were made upon defendants by other creditors of Atkinson for other merchandise, purporting to have been represented by bills of

lading accompanying the exchange sold by him to the defend-
ants. But this falls short of a finding that the claims rested on
the same ground as that of the plaintiffs, or that the claims
were valid. Yet, if this might be inferred, such finding is not
only not within any issue in the action, or any allegation or
defense set up in the answer, but the defense suggested by the
fact found or implied is inconsistent with the answer. If, as
is in that pleading alleged, the defendants actually paid Atkin-
son for the exchange, or advanced, upon the security of the
corn, the full amount of the bills of exchange, before notice of
plaintiffs' equity or their demand, the claims of others, whether ·
like the plaintiffs' or not, would be in no view material. Again,
the action was not commenced until October, and the fact
found, if relied upon and valid, should have been stated. If
the necessary facts existed, if the defendants were vexed or
likely to be vexed by conflicting claims of two or more per-
sons, they had a remedy by action of interpleader, and might
have stayed proceedings in this action until the rights of the
different claimants had been determined. In such an action
they would disclaim any personal interest, and by payment
into court, or otherwise, submit the fund to its disposal. This
is not the attitude of the defendants. In this action they
assert a personal ownership of the bills of exchange, with the
corn as security, and payment of the whole amount. In such a
case an action of interpleader would not lie. Again, if there
was merit in the suggestion that the rights of other persons
were involved in this fund, the defendants might have had
them brought in as parties to the controversy. (Code, § 122.)
That they have resorted to neither remedy, nor set up the con-
flicting claims by answer, permits the inference that none
exist. For aught that appears, the bills of exchange have
been paid; and if others ever had an interest in the proceeds,
it has in some way been terminated. Having forborne to ·
adopt either mode of proceeding, and having offered to pay
over the money upon Atkinson's direction, the defendants
thereby identified themselves with Atkinson, and must stand
or fall with his title. (*Wilson* v. *Anderton*, 1 Barn. & Ad.

450 [20 Eng. Com. Law, 426]; *Hoffman* v. *Conner*, 76 N. Y. 121; 12 L. J. [N. S.] 117.)

It is, however, urged by the learned counsel for the appellants, that "by payment of part of the purchase-money for the exchange before notice of plaintiffs' claim, the defendants were entitled to protection as *bona fide* purchasers." If this means to the amount paid, it is a correct statement of the rule. But I understand the claim to be that they can therefore hold all the purchase-money. This does not seem to be so upon principle, and the cases cited by him fall short of that conclusion. They are *DeMott* v. *Starkey* (3 Barb. Ch. 403), *Weaver* v. *Barden* (49 N. Y. 286), *M. & T. Nat. Bank* v. *Crow* (60 id. 85). In the first, the note was purchased after notice of its invalidity, and the partial payment made was held to have been wrongful and insufficient to sustain a title. It is true the Chancellor says: To entitle a party to the character of a *bona fide* purchaser without notice, he must not only have obtained the legal title to the property, "but he must have paid the purchase-money, or some part thereof at least, before he had notice of such prior right," and this is repeated in *Weaver* v. *Barden ;* but here its meaning and extent appear, for it is added that such an one "is entitled to a lien to the amount of the consideration paid, and to a repayment of that amount, before he will be required to reconvey the stock" — the property then in question. While in the third, the note in question was paid for in full, in money or by canceling and giving up another note. The substance of the transaction here is that the plaintiffs' property was in part the consideration for the bills of exchange, and they are entitled to so much of the price agreed to be paid therefor by the defendants as will make them whole. But in whatever aspect the case is regarded, the conclusion of the learned referee was correct.

It is now objected "that if the plaintiffs had any cause of action against the defendants, it was not in trover, nor by an action in the nature of trover." No question of this kind, however, appears to have been raised upon the trial, and the findings of the referee were so made as to present all the facts in the

case which either party thought material. It is too late now to suggest a variance, even if it would otherwise have availed. (*Tyng* v. *Com. Warehouse Co.*, 58 N. Y. 308.)

The judgment appealed from should be affirmed.

All concur, except FOLGER, Ch. J., and EARL and FINCH, JJ., dissenting.

Judgment affirmed.