PETER ADAMS CO. *v.* NATIONAL SHOE & LEATHER BANK *et al.*

(*Supreme Court, General Term, First Department.* May 13, 1887.)

1. BANKS—DEPOSITS OF MONEY FRAUDULENTLY OBTAINED—LIABILITY TO OWNER.
   Where money fraudulently obtained is deposited with a bank, which, after notice from the legal owner of its claim, with instructions not to pay to any one else, pays it to a third person, who also had notice of the claim, the bank and the one to whom the money is paid will be liable therefor to the legal owner, though the notice to the bank was informal.

2. SAME—ACTION TO RECOVER—PARTIES.
   Though the party to whom the money is paid is primarily liable therefor, the bank is liable in case it cannot be obtained from him, and both are properly made defendants in the same action.

*o*

**8. SAME—RIGHTS OF ATTACHING CREDITOR.**
   An attachment by a creditor of the depositor would not authorize the bank to pay the money to the creditor.

**4. SAME—DEPOSITS—APPLICATION OF CHECKS.**
   Where a bank keeps a general account with a depositor, placing to his credit his deposits, and charging against them his checks in the order in which they are drawn, the legal presumption is that the checks are paid in the order in which they are drawn, out of the earlier, instead of the later, deposits.

Appeal from special term, New York county.

Action by the Peter Adams Company against the National Shoe & Leather Bank, Theodore Conrow, and others. Judgment for defendants, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Henry H. Bowman,* for appellant.  *George C. Lay,* for respondent Shoe & Leather Bank.  *Henry Parsons,* for respondents Conrow Bros.

DANIELS, J.  The plaintiff delivered its check, drawn on the 29th of October, 1884, for the sum of $4,500, to A. C. Branscom, representing himself to be the manager of the publishing department of the New Orleans Exposition. This check was drawn upon the Nassau Bank, and was received by Branscom upon a note of $5,500, dated on the 19th of August, 1884. This note was made in the name of the Mississippi Mills, and had the name of William M. Oliver, "secretary" and "treasurer" subscribed to it. The plaintiff was a manufacturer and dealer in paper, a large quantity of which was contracted for, and to be delivered to Branscom. The difference of $1,000 between the amount of the note and the check was to be retained by the plaintiff as security for the fulfillment of his agreement. The check was deposited on the day of its date with the National Shoe & Leather Bank, and by the account it appears to have been the last deposit made by Branscom with the bank. His account was afterwards reduced by checks drawn against it to the sum of about $2,915. On the 8th of November he drew a check for that amount in favor of the defendants Conrow Bros., for which they received this sum of money. Another check was drawn by him for the sum of $1,617, which practically closed his account with the bank. It was to recover this sum of money paid upon the check given by Branscom to Conrow Bros. that this action was instituted. It proceeded upon the affirmation that the plaintiff had been induced to make and deliver its check to Branscom, not only by means of false and fraudulent representations, but upon the note made in the name of the Mississippi Mills, and indorsed with the name of the president of the exposition, which in fact was a forgery.

When this state of facts, which was abundantly maintained by the evidence, came to the knowledge of the plaintiff, it served a notice on Branscom, dated on the 6th of November, 1884, disaffirming and rescinding the agreements with him, and requiring a return from him of $4,500 loaned and advanced by the plaintiff's check on the 29th of October. Notice was also given to the bank itself by the plaintiff, claiming the money on deposit as the money of the plaintiff. This notice was objected to upon the trial as insufficient, for the reason that it only claimed that "a certain sum of money lately deposited with you by Alexander C. Branscom, as manager or otherwise, and which sum, or some part thereof, remains on deposit with you to the credit of said Branscom, is the property of the undersigned, Peter Adams Company." The notice then proceeded to state that the money had been obtained by fraud by Branscom, and notified the bank not to pay it to him, or to his order, or to any other person, but to pay or hold it subject to the order of the plaintiff.

The notice was incomplete, for it did not trace the money to the check which had been delivered by the plaintiff to Branscom on the Nassau Bank. But its deficiency in this respect did not operate to the prejudice of the plain-

tiff, for it appeared by the conversation which, on the 6th of November, took place between the plaintiff's counsel, Henry H. Branscom, and Mr. Crane, the president of the bank, that it was understood by him that the notice did refer to this money still standing to the credit of Branscom in his account, and which had in fact been obtained from the Nassau Bank on the check by this defendant. This conversation was induced by a letter written by the president, dated the same day, stating that they had no funds under their control which were deposited by Alexander C. Branscom, as manager or otherwise. The president of the bank, in the interview between himself and Mr. Branscom, explained this statement as having proceeded upon the circumstance that an attachment had been issued in favor of the Conrows against Branscom, under which the money owing to him by the bank had been attached, and the interview which then took place proceeded throughout upon the practical concession that the president of the bank understood the written notice to refer to the plaintiff's check and its proceeds, which had been collected by it, and placed to the credit of Branscom. It further appeared that the attachment proceedings were discontinued on the 8th of November, before the check in favor of Conrow Bros. for this sum of money had been paid over to them by the bank, and that the payment was followed by a consultation with counsel, who advised that such payment might safely be made. From this evidence the fact very clearly appears that the president did understand that the written notice, as well as that contained in the verbal conversation, was intended to relate to the money paid out on this check, and that it was so paid to Conrow Bros. in disregard of the notice which had been given informing the bank of the rights of the plaintiff; and, having made the payment in that manner, the bank cannot legally claim to be shielded from the consequences of its unauthorized act.

The cases of *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82, and *Justh* v. *Bank*, 56 N. Y. 478, do not protect the bank in making this payment of the money. In the first of these cases no question bearing any relation to this disposition of the money arose. It is no more than a decision concerning the effect of certifying a check, while in the latter case the money was paid out in good faith, which protected the bank on account of that circumstance, not appearing in this case. Neither did the attachment proceeding afford the bank any legal reason for paying out this money after it had been advised of the claim or right of the plaintiff; for, as that was issued against Branscom alone, no more could be seized under it than his right or interest in the money in controversy, and that was subordinate to the legal right of the plaintiff to reclaim it upon the discovery of the fraud and forgery, and the election to rescind their agreement with Branscom. But it was not pretended, and could not have been, that the attachment afforded any protection to the bank; for it had in fact been withdrawn, as well as the levy under it, and the money was paid over in compliance with the check of Branscom, who had in this manner fraudulently received the plaintiff's check; and that in this state of the facts it had the right to disaffirm its transactions with Branscom, and follow the money and reclaim it, so far as its identity could be traced, has been reasonably well settled by the cases of *Newton* v. *Porter*, 69 N. Y. 133, and *Dows* v. *Kidder*, 84 N. Y. 121.

That this was the identical money produced by the plaintiff's check is established by the fact that it was the last deposit in Branscom's account, and this balance of it remained unpaid to him. The checks or drafts, previously made by him upon his account, were, as a matter of legal presumption, first paid out of the preceding deposits, and the residue only, not so paid, were then paid from so much of the last deposit as became necessary to meet their amounts. This presumption applies where no intervening circumstance is made to appear justifying its exclusion, and there is no such circumstance in this case, for the account was kept generally as a debtor and creditor account in favor of Branscom, placing to his credit his deposits. and charging against

them the checks drawn by him in the order in which they were so drawn. And when that is the case the presumption already mentioned applies,—that the checks are paid in the order in which they are drawn, out of the earlier, instead of the later, deposits of money. *Pennell* v. *Deffell,* 4 De Gex, M. & G. 372, 384, following the rule in *Clayton's Case,* 1 Mer. 572, 608; and this has been further sanctioned by the case of *Knatchbull* v. *Hallett,* 13 Ch. Div. 696; and *Dows* v. *Kidder, supra,* may not improperly be said to support the application of the same principle.

The bank, however, may still escape liability if the fund parted with in this manner shall be recovered from the other defendants; for the object of the action is to follow and recover the fund as the equitable property of the plaintiff. The defendants Conrow received it in a manner charging them with notice of the plaintiff's right to the money. If that had not been the fact, then, under the authority of *Stephens* v. *Board,* 79 N. Y. 183, the plaintiff would have no remedy over against them; for receiving such money in good faith, upon a precedent indebtedness, will entitle the party receiving it to hold it. But, before it was in this manner received, notice was given to Henry Parsons, who was the attorney and counsel for the Conrows, that the plaintiff claimed to be entitled to this money, as the proceeds of the check obtained from them in the manner already stated. Before this conversation took place they had employed Parsons to prosecute their demand against Branscom, and he had issued an attachment under which the seizure of the deposit was made; for that attachment was issued on the 3d of November, and on the 5th of the same month Mr. Bowman testified that he stated to Parsons that the money in the bank was the plaintiff's money, obtained through fraud, and claimed that neither Mr. Conrow nor Branscom nor any one else had title to it. After this conversation, as well as the preceding conversation between Bowman and one of the defendants, it cannot very well be assumed to be the fact that these defendants received the money in good faith. The evidence is adverse to that presumption, leading directly to the conclusion that when they received it, on the 8th of November, it was subject to this notice given to their attorney and counsel that it was the money of the plaintiff, and not of Branscom; and that the notice is entitled to have that weight and effect in the case seems to be sustained by what was held in *Village of Port Jervis* v. *Bank,* 96 N. Y. 550, 558, 559.

At the close of the proof, an application was made by the counsel for the Conrow Bros. for a direction that the plaintiff should elect which of the defendants it would claim to hold. This was objected to by the plaintiff, but the court nevertheless required the election to be made, and to that ruling the plaintiff excepted, and under it the election was made to proceed against the bank, and the complaint was dismissed as to the Conrow Bros. There was no foundation for such an application. The case proceeded upon a single cause of action, and that was the alleged right of the plaintiff to follow and recover this money from the possession of the party to which it could be traced; and, to entitle it to recover in this action, it was necessary that these different defendants should be brought before the court, and the plaintiff had the right to present its case, with all of them present in the action, and to be secured such relief against either or both as, under the circumstances, it might be legally entitled to demand. If that relief could not be obtained from the Conrow Bros., it probably might be against the bank, for paying over this money to them after receiving information of the plaintiff's right to it. It had the right, also, to claim that these defendants were primarily liable to it, and the bank liable only in case satisfaction could not be obtained from them, and for the complete and effectual disposition of the controversy these persons were all necessary parties to the action. The case was erroneously disposed of, and the judgment should be reversed, and a new trial ordered, with costs to abide the event. All concur.