Hon. MILO L. BENNETT, ⎫
Hon. LUKE P. POLAND, ⎬ ASSISTANT JUDGES.
Hon. JOHN PIERPOINT, ⎭

---

### SESSIONS L. HEFFLIN *v.* WILLIAM H. BELL.

*Attachment of vendee's interest under a conditional sale. Tender to vendor. Jurisdiction.*

Where one has purchased personal property with an agreement that it shall belong to the vendor until the price is paid, in order to enable a creditor of the vendee to attach and hold the property discharged from the claim of the vendor under the statute of 1854 (Laws of 1854, page 15), he must pay or tender to the vendor the amount of his claim to the property *within ten days* after the attachment, and this tender must be of a definite sum and the money must be brought into court.

The tender must be so made that the vendor may accept the sum offered at any point in the proceeding, and that he may also have it secured to him in the event of the litigation being determined against him.

Where personal property worth more than one hundred dollars had been sold with a condition that it should belong to the vendor until the price was paid, and after sufficient had been paid to reduce the vendor's claim to about fifty dollars, a creditor of the vendee caused the property to be attached and neglected to make the requisite tender to the vendor under the statute, *it was held by the court*, in an action of trespass in favor of the vendor against the attaching officer, that it was a doubtful question whether the vendor was entitled to recover the value of the property, or only the amount of his claim thereto; and that the question being doubtful, the suit, being brought originally in the county court, should not be dismissed for want of jurisdiction.

TRESPASS for a horse. Plea not guilty, and trial by jury, at the December Term, 1856,—PECK, J., presiding.

The plaintiff introduced evidence tending to show that on February 22d, 1855, he sold and delivered the horse in question, under a written contract, to one Connor, for one hundred and twenty-five dollars, with a condition to such sale that the horse was not to become Connor's property until the whole purchase money was paid, for which Connor gave the plaintiff a note, dated at the time the contract was made, and payable in six months from date, with interest; that previous to the alleged trespass by the defendant, Connor had paid the plaintiff seventy-five dollars upon this note, which was the only payment he had ever made thereon; that the defendant on the 16th of October, 1855, took the horse out of Connor's possession and shortly afterward sold him, and that the plaintiff, after the defendant had taken the horse but before he sold him, informed the defendant of the aforesaid condition in the sale to Connor, and that only seventy-five dollars of the price had been paid to him, and demanded the horse.

The plaintiff's evidence also tended to show that the horse was worth more than one hundred dollars when taken by the defendant.

It appeared from the evidence introduced by the defendant that he was authorized to serve a writ in favor of one Barney against Connor, and that he served it by attaching the horse in question; that judgment was rendered in favor of Barney in this suit and an execution issued thereon, which was placed in the defendant's

hands for collection, under which he regularly sold the horse on the 12th of November, 1855.

It further appeared from the testimony introduced by the defendant, that the defendant and Barney on the day after the attachment asked the plaintiff if he had any claim on the horse, and if so, how much it was; that the plaintiff replied that he had a claim upon the horse, but that he could not tell its amount because Connor owed him for board and horse-keeping; that he had not settled with him and did not know the amount of Connor's indebtedness to him; that they asked him if Connor gave him a note for the price of the horse, and if so, for what amount, and how much Connor had paid him on the note; that the plaintiff replied that Connor gave him a note for one hundred and twenty-five dollars, and had paid on it seventy-five dollars, and no more; that the defendant told him he had come prepared to pay him his claim, whatever it was, and was ready to pay it if he would tell its amount; that the defendant took out his pocket book containing one hundred and fifty dollars in current bank bills, and told the plaintiff he had the money then to pay his claim upon the horse, if he had any, (the witnesses on this point testified that they did not know whether the defendant opened his pocket book and showed the money to the plaintiff or not); that the plaintiff replied that he could not state the amount of his claim as he did not know the amount of Connor's indebtedness to him for board and horse-keeping; that they requested the plaintiff to let them see the note, but he refused, and that they did not ask him what were the dates of the note or indorsement.

The court charged the jury that this proposal or offer to pay the plaintiff was not sufficient to constitute a defense to this action, to which the defendant excepted.

The defendant also introduced evidence tending to show that a day or two after the service upon him of the writ in this action, and more than ten days after he attached the horse in the suit against Connor, the defendant's attorney tendered to the plaintiff the sum of fifty-three dollars in satisfaction of his claim to the horse and the costs in this suit, which the plaintiff refused to accept. The defendant brought the fifty-three dollars so tendered into court.

Hefflin *v.* Bell.

The court charged the jury that this last tender was no defense to this action, to which the defendant excepted.

The testimony on both sides tended to show that the horse, at the time the defendant took and sold him, was worth much more than the balance due from Connor to the plaintiff on the note given for the horse.

The plaintiff claimed that the rule of damages was the value of the horse, and the defendant claimed that it was only the balance of his price due from Connor to the plaintiff. The court charged the jury on this point as claimed by the defendant, to which the plaintiff excepted.

After verdict and before judgment, the defendant moved to dismiss the cause upon the ground that the county court had not original jurisdiction of the matter in demand. But the court overruled this motion, to which the defendant excepted.

*H. S. Royce* and *L. E. Pelton*, for the plaintiff.

*H. R. Beardsley* and *Peake & Burt*, for the defendant.

The opinion of the court was delivered by

REDFIELD, Ch. J. Two questions are raised in the present case:

I. Whether the tender proved in the case is sufficient, under the statute of 1854, to enable the officer to hold the property under the attachment, discharged of the plaintiff's claim. The statute in terms requires a " tender to the vendor, his agent or attorney, within ten days after such attachment, of the residue of such purchase money." The evidence of some attempt at a tender by the attorney, after the ten days had expired and the suit was commenced, may be laid out of the case as not coming within the statute. And it is only by virtue of the statute that any tender could be made available.

The evidence of tender within the ten days seems to fall far short of what is required for a tender. No definite sum was offered and no money brought into court, both of which are indispensable to a tender. This is attempted to be excused by the difficulty of ascertaining the sum to be tendered. But the statute only allows a tender of the " residue of the purchase money," and there

did not seem any difficulty in ascertaining this. The testimony seems to show that the plaintiff stated this, according to the fact, that seventy-five dollars only had been paid towards the price, which was one hundred and twenty-five dollars. And it is necessary that the party, to have any benefit, should make a tender, and it would seem he must do this at his peril. For it is necessary, at all events, to put the matter in such a train that the vendor may accept the sum offered at any point in the proceeding, and that he may also have it secured to him in the event of the litigation being determined against him. For which purpose it is necessary the money should be paid into court and there remain, subject to the event of the litigation. We have no occasion to say what will be the consequence of the vendor giving false information in regard to the sum due or refusing to give any information.

II. It is claimed the suit should be dismissed for want of jurisdiction. This will depend upon the construction of the statute.

If the statute gives the right to attach the vendee's interest in the property so situated, and the attachment is perfectly valid to hold the vendee's interest, without reference to the tender, and that is important only in regard to the vendor's interest, then of course there was no very good reason to expect that the plaintiff could recover more than one hundred dollars.

But if the right to attach depended upon the tender being made, and the statute conferred no right except upon the performance of such condition, then, under the former decisions of this court, the plaintiff might fairly have calculated that he should recover the value of the property. And if this question is fairly to be regarded as doubtful, the cause is not to be dismissed for want of jurisdiction, according to repeated decisions of this court.

And that this is a doubtful question it need only be said that, after argument, the court are not now prepared to decide it. But as the plaintiff waives all exception upon that ground, he is entitled to have the judgment affirmed.