# HARKNESS *v.* RUSSELL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

Submitted November 17, 1885.—Decided November 8, 1886.

In the absence of fraud, an agreement for a conditional sale of personal property accompanied by delivery is good and valid, as well against third persons as against the parties to the transaction.

A bailee of personal property, who receives it under an agreement that he may purchase it on the performance of conditions on his part, cannot convey title to it or subject it to execution for his own debts, until performance of the conditions on which the agreement to sell is made.

A, having agreed to sell certain personal property to B on the performance of conditions on his part, delivered it to him, and took from him a promissory note stating the following as the condition of the sale : "The express condition of this transaction is such that the title, ownership, or possession of said property does not pass from the said A until this note and interest shall have been paid in full, and the said A has full power to declare this note due and take possession of said engine and saw-mill when he may deem himself

insecure, even before the maturity of this note. In case said property shall be taken back, A may sell the same at public or private sale without notice, or he may without sale endorse the true value of the property on this note, and I agree to pay on the note any balance due thereon after such endorsement, as damages and rental for said machinery." B entered into possession, and, without performing the conditions of sale, sold the property to C, who knew that it had not been paid for, and that A claimed title to it. At the time of the sale· to C, the value of the property was less than the amount due on the note. In an action against C to recover the value of the property, *Held :* That this transaction was not a mortgage, but was an executory conditional sale; and, being free from fraud, that it was valid.

This was an appeal from the Supreme Court of Utah. The action was brought in the District Court for Weber County, to recover the value of two steam-engines and boilers, and a portable saw-mill connected with each engine. A jury being waived, the court found the facts and rendered judgment for the plaintiff, Russell & Co. The plaintiff is an Ohio corporation, and by its agent in Idaho, on the 2d of October, 1882, agreed with a partnership firm by the name of Phelan & Ferguson, residents of Idaho, to· sell to them the said engines, boilers, and saw-mills for the price of $4988, nearly all of which was secured by certain promissory notes, which severally contained the terms of the agreement between the parties. One of. the notes (the others being in the same form) was as follows, to wit :

. " Salt Lake City, *Oct.* 2, 1882.

" On or before the first day of May, 1883, for value received in one sixteen-horse portable engine, No. 1026, and one portable saw-mill, No. 128, all complete, bought of L. B. Mattison, agent of Russell & Co., we, or either of us, promise to pay to the order of Russell & Co., Massillon, Ohio, $300, payable at Wells, Fargo & Co.'s bank, Salt Lake City, Utah Territory, with ten per cent. interest per annum from October 1, 1882, until paid, and reasonable attorney's fees, or any costs that may be paid or incurred in any action· or proceeding instituted for the collection of this note or enforcement of this covenant. The express condition of this transaction is such that the title, ownership, or possession of said engine and saw-mill does' not

pass from the said Russell & Co. until this note and interest shall have been paid in full, and the said Russell & Co. or his agent has full power to declare this note due and take possession of said engine and saw-mill when they may deem themselves insecure, even before the maturity of this note; and it is further agreed by the makers hereof, that if said note is not paid at maturity, that the interest shall be two per cent. per month from maturity hereof till paid, both before and after judgment, if any should be rendered. In case said saw-mill and engine shall be taken back, Russell & Co. may sell the same at public or private sale without notice, or they may without sale endorse the true value of the property on this note, and we agree to pay on the note any balance due thereon after such endorsement, as damages and rental for said machinery. As to this debt we waive the right to exempt or claim as exempt any property, real or personal, we now own, or may hereafter acquire, by virtue of any homestead or exemption law, State or Federal, now in force, or that hereafter may be enacted.

"P. O., Oxford, Oneida County, Idaho Territory.

"$300. PHELAN & FERGUSON."

Some of the notes were given for the price of one of the engines with its accompanying boiler and mill, and the others for the price of the other. Some of the notes were paid; and the present suit was brought on those that were not paid. The property was delivered to Phelan & Ferguson, on the execution of the notes, and subsequently they sold it to the defendant Harkness, in part payment of a debt due from them to him and one Langsdorf. The defendant, at the time of the sale to him, knew that the purchase-price of the property had not been paid to the plaintiff, and that the plaintiff claimed title thereto until such payment was made. The unpaid notes given for each engine and mill exceeded in amount the value of such engine and mill when the action was commenced.

The Territory of Idaho has a law relating to chattel mortgages [Act of January 12, 1875], requiring that every such mortgage shall set out certain particulars as to parties, time, amount, &c., with an affidavit attached, that it is *bona fide*, and

made without any design to defraud and delay creditors; and requiring the mortgage and affidavit to be recorded in the county where the mortgagor lives, and in that where the property is located; and it is declared that no chattel mortgage shall be valid (except as between the parties thereto) without compliance with these requisites, unless the mortgagee shall have actual possession of the property mortgaged. In the present case no affidavit was attached to the notes, nor were they recorded.

The court found that it was the intention of Phelan & Ferguson, and of Russell & Co., that the title to the said property should not pass from Russell & Co. until all the notes were paid.

Upon these facts the court found, as conclusions of law, that the transaction between Phelan & Ferguson and Russell & Co. was a conditional, or executory sale, and not an absolute sale with a lien reserved, and that the title did not pass to Phelan & Ferguson, or from them to the defendant; and gave judgment for the plaintiff. The Supreme Court of the Territory affirmed this judgment. This appeal was taken from that judgment.

*Mr. Parley L. Williams* (*Mr. James N. Kimball* and *Mr. Abbot R. Heywood* were with him on the brief), for appellant.

*Mr. Charles W. Bennett*, for appellee.

MR. JUSTICE BRADLEY, after stating the facts as above reported, delivered the opinion of the court.

The first question to be considered is, whether the transaction in question was a conditional sale or a mortgage; that is, whether it was a mere agreement to sell upon a condition to be performed, or an absolute sale, with a reservation of a lien or mortgage to secure the purchase-money. If it was the latter, it is conceded that the lien or mortgage was void as against third persons because not verified by affidavit and not recorded as required by the law of Idaho. But, so far as words and the express intent of the parties can go, it is per-

fectly evident that it was not an absolute sale, but only an agreement to sell upon condition that the purchasers should pay their notes at maturity. The language is: "The express condition of this transaction is such that the title . . . does not pass . . . until this note and interest shall have been paid in full." If the vendees should fail in this, or if the vendors should deem themselves insecure before the maturity of the notes, the latter were authorized to repossess themselves of the machinery, and credit the then value of it, or the proceeds of it if they should sell it, upon the unpaid notes. If this did not pay the notes, the balance was still to be paid by the makers by way of "damages and rental for said machinery." This stipulation was strictly in accordance with the rule of damages in such cases. Upon an agreement to sell, if the purchaser fails to execute his contract, the true measure of damages for its breach is the difference between the price of the goods agreed on and their value at the time of the breach or trial, which may fairly be stipulated to be the price they bring on a re-sale. It cannot be said, therefore, that the stipulations of the contract were inconsistent with, or repugnant to, what the parties declared their intention to be, namely, to make an executory and conditional contract of sale. Such contracts are well known in the law and often recognized; and when free from any fraudulent intent are not repugnant to any principle of justice or equity, even though possession of the property be given to the proposed purchaser. The rule is formulated in the text-books and in many adjudged cases. In Lord Blackburn's Treatise on the Contract of Sale, published forty years ago, two rules are laid down as established: (1.) That where by the agreement the vendor is to do anything to the goods before delivery, it is a condition precedent to the vesting of the property. (2.) That where anything remains to be done to the goods for ascertaining the price, such as weighing, testing, &c., this is a condition precedent to the transfer of the property. Blackburn on Sales, 152. And it is subsequently added, that "the parties may indicate an intention, by their agreement, to make any condition precedent to the vesting of the property, and, if they do so, their intention is fulfilled." Blackburn on

Sales, 167. Mr. Benjamin, in his Treatise on Sales of Personal Property, adds to the two formulated rules of Lord Blackburn a third rule, which is supported by many authorities, to wit: (3.) "Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." Benjamin on Sales, 2d Ed., p. 236; 3d Ed. § 320. The author cites for this proposition *Bishop* v. *Shillito*, 2 B. & Ald. 329, note (a); *Brandt* v. *Bowlby*, 2 Barn. & Adolph. 932; *Barrow* v. *Coles* (Lord Ellenborough), 3 Campbell, 92; *Swain* v. *Shepherd* (Baron Parke), 1 Mood. & Rob. 223; *Mires* v. *Solebay*, 2 Mod. 243. In the last case, decided in the time of Charles II., one Alston took sheep to pasture for a certain time, with an agreement that if at the end of that time he should pay the owner a certain sum, he should have the sheep. Before the time expired the owner sold them to another person; and it was *held*, that the sale was valid, and that the agreement to sell the sheep to Alston, if he would pay for them at a certain day, did not amount to a sale, but only to an agreement. The other cases were instances of sales of goods to be paid for in cash or securities on delivery. It was held that the sales were conditional only, and that the vendors were entitled to retake the goods, even after delivery, if the condition was not performed, the delivery being considered as conditional. This often happens in cases of sales by auction, when certain terms of payment are prescribed, with a condition that if they are not·complied with the goods may be re-sold for account of the buyer, who is to account for any deficiency between the second sale and the first. Such was the case of *Lamond* v. *Davall*, 9 Q. B. 1030, and many more cases could be cited. In *Crawcour* v. *Robertson*, 9 Ch. Div. 419, certain furniture dealers let Robertson have a lot of furniture upon his paying £10 in cash and signing an agreement to pay £5 per month (for which notes were given) until the whole price of the furniture should be paid, and when all the instalments were paid, and not before, the furniture was to be the property

of Robertson; but if he failed to pay any of the instalments, the owners were authorized to take possession of the property, and all prior payments actually made were to be forfeited. The court of appeal held that the property did not pass by this agreement, and could not be taken as Robertson's property by his trustee under a liquidation proceeding. The same conclusion was reached in the subsequent case of *Crawcour* v. *Salter*, 18 Ch. Div. 30. In these cases, it is true, support of the transaction was sought from a custom which prevails in the places where the transactions took place, of hotel-keepers holding their furniture on hire. But they show that the intent of the parties will be recognized and sanctioned where it is not contrary to the policy of the law. This policy, in England, is declared by statute. It has long been a provision of the English bankrupt laws, beginning with 21 James I., c. 19, that if any person becoming bankrupt has in his possession, order, or disposition, by consent of the owner, any goods or chattels of which he is the reputed owner, or takes upon himself the sale, alteration, or disposition thereof as owner, such goods are to be sold for the benefit of his creditors. This law has had the effect of preventing or defeating conditional sales accompanied by voluntary delivery of possession, except in cases like those before referred to; so that very few decisions are to be found in the English books directly in point on the question under consideration. The following case presents a fair illustration of the English law as based upon the statutes of bankruptcy. In *Horn* v. *Baker*, 9 East, 215, the owner of a term in a distillery, and of the apparatus and utensils employed therein, demised the same to J. & S., in consideration of an annuity to be paid to the owner and his wife during their several lives, and upon their death the lessees to have the liberty of purchasing the residue of the term and the apparatus and utensils; with a proviso for re-entry if the annuity should at any time be two months in arrear. The annuity having become in arrear for that period, instead of making entry for condition broken, the wife and administrator of the owner brought suit to recover the arrears, which was stopped by the bankruptcy of J. & S. The question then arose whether the

utensils passed to the assignees of J. & S. under the bankrupt act, as being in their possession, order, and disposition as reputed owners; and the court held that they did; but that if there had been a usage in the trade of letting utensils with a distillery, the case would have admitted a different consideration, since such a custom might have rebutted the presumption of ownership arising from the possession and apparent order and disposition of the goods. This case was followed in *Holroyd* v. *Gwynne*, 2 Taunt. 176.

This presumption of property in a bankrupt, arising from his possession and reputed ownership, became so deeply embedded in the English law, that, in process of time, many persons in the profession, not adverting to its origin in the statute of bankruptcy, were led to regard it as a doctrine of the common law; and hence, in some States in this country, where no such statute exists, the principles of the statute have been followed, and conditional sales of the kind now under consideration have been condemned, either as being fraudulent and void as against creditors, or as amounting, in effect, to absolute sales with a reserved lien or mortgage to secure the payment of the purchase-money. This view is based on the notion that such sales are not allowed by law, and that the intent of the parties, however honestly formed, cannot legally be carried out. The insufficiency of this argument is demonstrated by the fact that conditional sales are admissible in several acknowledged cases, and, therefore, there cannot be any rule of law against them as such. They may sometimes be used as a cover for fraud, and, when this is charged, all the circumstances of the case, this included, will be open for the consideration of a jury. Where no fraud is intended, but the honest purpose of the parties is that the vendee shall not have the ownership of the goods until he has paid for them, there is no general principle of law to prevent their purpose from having effect.

In this country, in States where no such statute as the English act referred to is in force, many decisions have been rendered sustaining conditional sales accompanied by delivery of possession, both as between the parties themselves and as to third persons.

In *Hussey* v. *Thornton*, 4 Mass. 404, decided in 1808, where goods were delivered on board of a vessel for the vendee upon an agreement for a sale, subject to the condition that the goods should remain the property of the vendors until they received security for payment, it was held (Chief Justice Parsons delivering the opinion) that the property did not pass, and that the goods could not be attached by the creditors of the vendee. This case was followed in 1822 by that of *Marston* v. *Baldwin*, 17 Mass. 606, which was replevin against a sheriff for taking goods which the plaintiff had agreed to sell to one Holt, the defendant in the attachment; but by the agreement the property was not to vest in Holt until he should pay $100 (part of the price), which condition was not performed, though the goods were delivered. Holt had paid $75, which the plaintiff did not tender back. The court held that it was sufficient for the plaintiff to be ready to repay the money when he should be requested, and a verdict for the plaintiff was sustained. In *Barrett* v. *Pritchard*, 2 Pick. 512, 515–16, the court said: "It is impossible to raise a doubt as to the intention of the parties in this case, for it is expressly stipulated that 'the wool before manufactured, after being manufactured, or in any stage of manufacturing, shall be the property of the plaintiff until the price be paid.' It is difficult to imagine any good reason why this agreement should not bind the parties. . . . The case from Taunton, *Holroyd* v. *Gwynne*, was a case of a conditional sale; but the condition was void as against the policy of the statute 21 Jac. I., ch. 19, § 11. It would not have changed the decision in that case if there had been no sale; for, by that statute, if the true owner of goods and chattels suffers another to exercise such control and management over them as to give him the appearance of being the real owner, and he becomes bankrupt, the goods and chattels shall be treated as his property, and shall be assigned by the commissioners for the benefit of his creditors. The case of *Horn* v. *Baker*, 9 East, 215, also turned on the same point, and nothing in either of these cases has any bearing on the present question." In *Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545–547, the rights of a *bona fide* pur-

chaser from one in possession under a conditional sale of goods were specifically discussed, and the court held, in an able opinion delivered by Mr. Justice Bigelow, that a sale and delivery of goods on condition that the title shall not vest in the vendee until payment of the price, passes no title until the condition is performed, and the vendor, if guilty of no laches, may reclaim the property, even from one who has purchased from his vendee in good faith, and without notice. The learned justice commenced his opinion in the following terms: "It has long been the settled rule of law in this commonwealth that a sale and delivery of goods on condition that the property is not to vest until the purchase-money is paid 'or secured, does not pass the title to the vendee, and that the vendor, in case the condition is not fulfilled, has a right to repossess himself of the goods, both against the vendee and against his creditors claiming to hold them under attachments." He then addresses himself to a consideration of the rights of a *bona fide* purchaser from the vendee, purchasing without notice of the condition on which the latter holds the goods in his possession; and he concludes that they are no greater than those of a creditor. He says: "All the cases turn on the principle that the compliance with the conditions of sale and delivery is, by the terms of the contract, precedent to the transfer of the property from the vendor to the vendee. The vendee in such cases acquires no property in the goods. He is only a bailee for a specific purpose. The delivery which in ordinary cases passes the title to the vendee must take effect according to the agreement of the parties, and can operate to vest the property only when the contingency contemplated by the contract arises. The vendee, therefore, in such cases, having no title to the property, can pass none to others. He has only a bare right of possession; and those who claim under him, either as creditors or purchasers, can acquire no higher or better title. Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to the denial of the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy."

This case was followed in *Sargent* v. *Metcalf*, 5 Gray, 306; *Deshon* v. *Bigelow*, 8 Gray, 159; *Whitney* v. *Eaton*, 15 Gray, 225; *Hirschorn* v. *Canney*, 98 Mass. 149; and *Chase* v. *Ingalls*, 122 Mass. 381; and is believed to express the settled law of Massachusetts.

The same doctrine prevails in Connecticut, and was sustained in an able and learned opinion of Chief Justice Williams, in the case of *Forbes* v. *Marsh*, 15 Conn. 384, decided in 1843, in which the principal authorities are reviewed. The decision in this case was followed in the subsequent case of *Hart* v. *Carpenter*, 24 Conn. 427, where the question arose upon the claim of a *bona fide* purchaser.

In New York the law is the same, at least, so far as relates to the vendee in a conditional sale, and to his creditors; though there has been some diversity of opinion in its application to *bona fide* purchasers from such vendee. As early as 1822, in the case of *Haggerty* v. *Palmer*, 6 Johns. Ch. 437, where an auctioneer had delivered to the purchaser goods sold at auction, it being one of the conditions of sale that endorsed notes should be given in payment, which the purchaser failed to give, Chancellor Kent held that it was a conditional sale and delivery, and gave no title which the vendee could transfer to an assignee for the benefit of creditors; and he said that the cases under the English bankrupt act did not apply here. The Chancellor remarked, however, that " if the goods had been fairly sold by P. (the conditional vendee), or if the proceeds had been actually appropriated by the assignees, before notice of this suit, and of the injunction, the remedy would have been gone." In *Strong* v. *Taylor*, 2 Hill, 326, Nelson, C. J., pronouncing the opinion, it was held to be a conditional sale where the agreement was to sell a canal-boat for a certain sum to be paid in freighting flour and wheat, as directed by the vendor, he to have half the freight until paid in full with interest. Before the money was all paid the boat was seized under an execution against the vendee; and, in a suit by the vendor against the sheriff, a verdict was found for the plaintiff, under the instruction of the court, and was sustained in banc, upon the authority of the Massachusetts case of *Barrett* v. *Pritchard*,

2 Pick. 512. In *Herring* v. *Hoppock*, 15 N. Y. 409, 411, 414, the same doctrine was followed. In that case there was an agreement in writing for the sale of an iron safe, which was delivered to the vendee and a note at six months given therefor; but it was expressly understood that no title was to pass until the note was paid; and if not paid, Herring, the vendor, was authorized to re-take the safe and collect all reasonable charges for its use. The sheriff levied on the safe as the property of the vendee, with notice of the plaintiff's claim. The Court of Appeals held that the title did not pass out of Herring. Paige, J., said : " Whenever there is a condition precedent attached to a contract of sale, which is not waived by an absolute and unconditional delivery, no title passes to the vendee until he performs the condition, or the seller waives it." Comstock, J., said that if the question were new, it might be more in accordance with the analogies of the law to regard the writing given on the sale as a mere security for the debt, in the nature of a personal mortgage; but he considered the law as having been settled by the previous cases, and the court unanimously concurred in the decision.

In the cases of *Smyth* v. *Lynes*, 1 Seld. (5 N. Y.), 41, and *Wait* v. *Green*, 36 Barb. 585; *S. C.*, on appeal, 36 N. Y. 556, it was held that a *bona fide* purchaser, without notice, from a vendee who is in possession under a conditional sale, will be protected as against the original vendor. These cases were reviewed, and, we think, substantially overruled, in the subsequent case of *Ballard* v. *Burgett*, 40 N. Y. 314, in which separate elaborate opinions were delivered by Judges Grover and Lott. This decision was concurred in by Chief Judge Hunt and Judges Woodruff, Mason, and Daniels; Judges James and Murray dissenting. In that case Ballard agreed to sell to one France a yoke of oxen for a price agreed on, but the contract had the condition " that the oxen were to remain the property of Ballard until they should be paid for." The oxen were delivered to France, and he subsequently sold them to the defendant Burgett, who purchased and received them without notice that the plaintiff had any claim to them. The court sustained Ballard's claim; and subsequent cases in New York are in

harmony with this decision.  See *Cole* v. *Mann*, 62 N. Y. 1; *Bean* v. *Edge*, 84 N. Y. 510.

We do not perceive that the case of *Dows* v. *Kidder*, 84 N. Y. 121, is adverse to the ruling in *Ballard* v. *Burgett*. There, although the plaintiffs stipulated that the title to the corn should not pass until payment of the price (which was to be cash, the same day), yet they endorsed and delivered to the purchaser the evidence of title, namely, the weigher's return, to enable him to take out the bill of lading in his own name, and use it in raising funds to pay the plaintiff. The purchaser misappropriated the funds, and did not pay for the corn. Here the intent of both parties was that the purchaser might dispose of the corn, and he was merely the trustee of the plaintiff, invested by him with the legal title. Of course the innocent party who purchased the corn from the first purchaser was not bound by the equities between him and the plaintiff.

- The later case of *Parker* v. *Baxter*, 86 N. Y. 586, was precisely similar to *Dows* v. *Kidder;* and the same principle was involved in *Farwell* v. *Importers'. and Traders' Bank*, 90 N. Y. 483, where the plaintiff delivered his own note to a broker to get it discounted, and the latter pledged it as collateral for a loan made to himself: the legal title passed, and although, as between the plaintiff and the broker, the former was the owner of the note and its proceeds, yet that was an equity which was not binding on the innocent holder.

The decisions in Maine, New Hampshire, and Vermont are understood to be substantially to the same effect as those of Massachusetts and New York; though by recent statutes in Maine and Vermont, as also in Iowa, where the same ruling prevailed, it is declared in effect that no agreements that personal property bargained and delivered to another shall remain the property of the vendor, shall be valid against third persons without notice. *George* v. *Stubbs*, 26 Maine, 243; *Sawyer* v. *Fisher*, 32 Maine, 28; *Brown* v. *Haines*, 52 Maine, 578; *Boynton* v. *Libby*, 62 Maine, 253; *Rogers* v. *Whitehouse*, 71 Maine, 222; *Sargent* v. *Gile*, 8 N. H. 325; *McFarland* v. *Farmer*, 42 N. H. 386; *King* v. *Bates*, 57 N. H. 446; *Hefflin* v. *Bell*, 30 Vt. 134; *Armington* v. *Houston*, 38 Vt. 448; *Fales* v. *Roberts*,

38 Vt. 503; *Duncans* v. *Stone*, 45 Vt. 118; *Moseley* v. *Shattuck*, 43 Iowa, 540; *Thorpe* v. *Fowler*, 57 Iowa, 541.

The same view of the law has been taken in several other States. In New Jersey, in the case of *Cole* v. *Berry*, 13 Vroom (42 N. J. Law), 308, it was held that a contract for the sale of a sewing-machine to be delivered and paid for by instalments, and to remain the property of the vendor until paid for, was a conditional sale, and gave the vendee no title until the condition was performed; and the cases are very fully discussed and distinguished.

In Pennsylvania the law is understood to be somewhat different. It is thus summarized by Judge Depue, in the opinion delivered in *Cole* v. *Berry*, where he says: "In Pennsylvania a distinction is taken between delivery under a bailment, with an option in the bailee to purchase at a named price, and a delivery under a contract of sale containing a reservation of title in the vendor until the contract-price be paid; it being held that, in the former instance, property does not pass, as in favor of creditors and purchasers of the bailee, but that, in the latter instance, delivery to the vendee subjects the property to execution at the suit of his creditors, and makes it transferable to *bona fide* purchasers. *Chamberlain* v. *Smith*, 44 Penn. St. 431; *Rose* v. *Story*, 1 Penn. St. 190; *Marsh* v. *Mathiot*, 14 S. & R. 214; *Haak* v. *Linderman*, 64 Penn. St. 499." But, as the learned judge adds, "This distinction is discredited by the great weight of authority, which puts possession under a conditional contract of sale and possession under a bailment on the same footing—liable to be assailed by creditors and purchasers for actual fraud, but not fraudulent *per se*."

In this connection see the case of *Copland* v. *Bosquet*, 4 Wash. C. C. 588, where Mr. Justice Washington and Judge Peters (the former delivering the opinion of the court) sustained a conditional sale and delivery against a purchaser from the vendee, who claimed to be a *bona fide* purchaser without notice.

In Ohio the validity of conditional sales accompanied by delivery of possession is fully sustained. The latest reported case brought to our attention is that of *Call* v. *Seymour*, 40

Ohio St. 670, which arose upon a written contract contained in several promissory notes given for instalments of the purchase-money of a machine, and resembling very much the contract in the case now under consideration. Following the note, and as a part of the same document, is this condition: "The express conditions of the sale and purchase of the Separator and Horse-Power for which this note is given, is such, that the title, ownership, or possession does not pass from the said Seymour, Sabin & Co. until this note, with interest, is paid in full. The said Seymour, Sabin & Co. have full power to declare this note due and take possession of said Separator and Horse-Power at any time they may deem this note insecure, even before the maturity of the note, and to sell the said machine at public or private sale, the proceeds to be applied upon the unpaid balance of the purchase-price." The machine was seized under an attachment issued against the vendee, and the action was brought by the vendor against the constable who served the attachment. The case was fully argued, and the authorities *pro* and *con* duly considered by the court, which sustained the condition expressed in the contract and affirmed the judgment for the plaintiff. See also *Sanders* v. *Keber*, 28 Ohio St. 630.

The same law prevails in Indiana: *Shireman* v. *Jackson*, 14 Ind. 459; *Dunbar* v. *Rawles*, 28 Ind. 225; *Bradshaw* v. *Warner*, 54 Ind. 58; *Hodson* v. *Warner*, 60 Ind. 214; *McGirr* v. *Sells*, 60 Ind. 249.

The same in Michigan: *Whitney* v. *McConnell*, 29 Mich. 12; *Smith* v. *Lozo*, 42 Mich. 6; *Marquette Manufacturing Co.* v. *Jefferey*, 49 Mich. 283.

The same in Missouri: *Ridgeway* v. *Kennedy*, 52 Missouri, 24; *Wangler* v. *Franklin*, 70 Missouri, 650; *Sumner* v. *Cottey*, 71 Missouri, 121.

The same in Alabama: *Fairbanks* v. *Eureka Co.*, 67 Ala. 109; *Sumner* v. *Woods*, 67 Ala. 139.

The same in several other States. For a very elaborate collection of cases on the subject, see Mr. Bennett's note to Benjamin on Sales, 4th ed., § 320, pp. 329–336; and Mr. Freeman's note to *Kanaga* v. *Taylor*, 7 Ohio St. 134, in 70 Am. Dec. 62.

It is unnecessary to quote further from the decisions; the quotations already made show the grounds and reasons of the rule.

The law has been held differently in Illinois, and very nearly in conformity with the English decisions under the operation of the bankrupt law. The doctrine of the Supreme Court of that State is, that if a person agrees to sell to another a chattel on condition that the price shall be paid within a certain time, retaining the title in himself in the meantime, and delivers the chattel to the vendee so as to clothe him with the apparent ownership, a *bona fide* purchaser or an execution creditor of the latter is entitled to protection as against the claim of the original vendor. *Brundage* v. *Camp*, 21 Ill. 330; *McCormick* v. *Hadden*, 37 Ill. 370; *Murch* v. *Wright*, 46 Ill. 487; *Mich. Central Railroad* v. *Phillips*, 60 Ill. 190; *Lucas* v. *Campbell*, 88 Ill. 447; *Van Duzor* v. *Allen*, 90 Ill. 499. Perhaps the statute of Illinois on the subject of chattel mortgages has influenced some of these decisions. This statute declares that "no mortgage, trust deed, or other conveyance of personal property, having the effect of a mortgage or lien upon such property, is valid as against the rights and interests of any third person, unless the possession thereof be delivered to and remain with the grantee, or the instrument provide that the possession of the property may remain with the grantor, and the instrument be acknowledged and recorded." It has been supposed that this statute indicates a rule of public policy condemning secret liens and reservations of title on the part of vendors, and making void all agreements for such liens or reservations unless registered in the manner required for chattel mortgages. At all events, the doctrine above referred to has become a rule of property in Illinois, and we have felt bound to observe it as such. In the case of *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664, 671, where a Rhode Island company leased to certain Illinois railroad contractors a locomotive engine and tender at a certain rent, payable at stated times during the ensuing year, with an agreement that if the rent was duly paid the engine and tender should become the property of the lessees, and possession was delivered to them, this court, being satisfied that the transaction was a

conditional sale, and that, by the law of Illinois, the reservation of title by the lessors was void as against third persons, unless the agreement was recorded (which it was not in proper time), decided that a levy and sale of the property in Illinois, under a judgment against the lessees, were valid, and that the Locomotive Works could not reclaim it. Mr. Justice Davis, delivering the opinion of the court, said: "It was decided by this court in *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139, that the liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law there rather than that of the jurisdiction where the owner lives. These decisions rest on the ground that every State has the right to regulate the transfer of property within its limits, and that whoever sends property to it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides. . . . The policy of the law in Illinois will not permit the owner of personal property to sell it, either absolutely or conditionally, and still continue in possession of it. Possession is one of the strongest evidences of title to this class of property, and cannot be rightfully separated from the title, except in the manner pointed out by the statute. The courts of Illinois say that to suffer, without notice to the world, the real ownership to be in one person, and the ostensible ownership in another, gives a false credit to the latter, and, in this way, works an injury to third persons. Accordingly, the actual owner of personal property creating an interest in another to whom it is delivered, if desirous of preserving a lien on it, must comply with the provisions of the Chattel Mortgage Act. Rev. Stat. Ill. 1874, 711, 712." The Illinois cases are then referred to by the learned justice to show the precise condition of the law of that State on the subject under consideration.

The case of *Hervey* v. *Rhode Island Locomotive Works* is relied on by the appellants in the present case as a decision in their favor; but this is not a correct conclusion; for it is apparent that the only points decided in that case were, first, that it was to be governed by the law of Illinois, the place

where the property was situated; secondly, that by the law of Illinois the agreement for continuing the title of the property in the vendors, after its delivery to the vendees, whereby the latter became the ostensible owner, was void as against third persons. This is all that was decided, and it does not aid the appellants, unless they can show that the law as held in Illinois, contrary to the great weight of authority in England and this country, is that which should govern the present case. And this we think they cannot do. We do not mean to say that the Illinois doctrine is not supported by some decisions in other States. There are such decisions; but they are few in number compared with those in which it is held that conditional sales are valid and lawful, as well against third persons as against the parties to the contract.

The appellants, however, rely with much confidence on the decision of this court in *Heryford* v. *Davis*, 102 U. S. 235, 243, a case coming from Missouri, where the law allows and sustains conditional sales. But we do not think that this case, any more than that of *Hervey* v. *Rhode Island Locomotive Works*, will be found to support their views. The whole question in *Heryford* v. *Davis* was as to the construction of the contract. This was in the form of a lease; but it contained provisions so irreconcilable with the idea of its being really a lease, and so demonstrable that it was an absolute sale with a reservation of a mortgage lien, that the latter interpretation was given to it by the court. This interpretation rendered it obnoxious to the statute of Missouri requiring mortgages of personal property to be recorded in order to be valid as against third persons. It was conceded by the court, in the opinion delivered by Mr. Justice Strong, that if the agreement had really amounted to a lease, with an agreement for a conditional sale, the claim of the vendors would have been valid. The first two or three sentences of the opinion furnish a key to the whole effect of the decision. Mr. Justice Strong says: " The correct determination of this case depends altogether upon the construction that must be given to the contract between the Jackson & Sharp company and the railroad company, against which the defendants below recovered their judgment and obtained

their execution. If that contract was a mere lease of the cars to the railroad company, or if it was only a conditional sale, which did not pass the ownership until the condition should be performed, the property was not subject to levy and sale under execution at the suit of the defendant against the company. But if, on the other hand, the title passed by the contract, and what was reserved by the Jackson & Sharp company was a lien or security for the payment of the price, or what is called, sometimes, a mortgage back to the vendors, the cars were subject to levy and sale as the property of the railroad company."

The whole residue of the opinion is occupied with the discussion of the true construction of the contract, and, as we have stated, the conclusion was reached that it was not really a lease, nor a conditional sale, but an absolute sale, with the reservation of a lien or security for the payment of the price. This ended the case; for, thus interpreted, the instrument inured as a mortgage in favor of the vendors, and ought to have been recorded in order to protect them against third persons.

But whatever the law may be with regard to a *bona fide* purchaser from the vendee in a conditional sale, there is a circumstance in the present case which makes it clear of all difficulty. The appellant in the present case was not a *bona fide* purchaser without notice. The court below find that at the time of and prior to the sale he knew the purchase-price of the property had not been paid, and that Russell & Co. claimed title thereto until such payment was made. Under such circumstances, it is almost the unanimous opinion of all the courts that he cannot hold the property as against the true owners. But as the rulings of this court have been, as we think, somewhat misunderstood, we have thought it proper to examine the subject with some care, and to state what we regard as the general rule of law, where it is not affected by local statutes or local decisions to the contrary.

It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent, in this case, the operation of the general rule, which we consider to be established by overwhelming authority, namely, that, in the absence of fraud, an agreement for a conditional sale is good and valid,

as well against third persons as against the parties to the transaction; and the further rule, that a bailee of personal property cannot convey the title, or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed.

The judgment of the Supreme Court of the Territory of Utah is                                                                *Affirmed.*