G. W. PARSONS CO. v. UNITED STATES FIDELITY & GUARANTY CO.
OF BALTIMORE, MD.

(District Court, S. D. Iowa, C. D.   June 26, 1915.)

No. 203.

1. SALES ☞450—CONDITIONAL SALES—VALIDITY.
    A provision in a contract of sale of personal property reserving title
    thereto until full payment has been made of the purchase price is valid
    and enforceable between the parties.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1321; Dec. Dig.
    ☞450.]

2. SALES ☞473—CONDITIONAL SALES—BONA FIDE PURCHASERS. ·
    Defendant executed a surety bond for a contractor, and to indemnify
    it the contractor assigned and conveyed to it all tools, etc., then or there-
    after upon the work, with authority to take possession thereof in case the
    contractor failed or was unable to complete the work, or in the event of
    any default on its part. The contractor subsequently purchased a trench-
    ing machine from plaintiff by a contract which expressly reserved title
    until full payment of the purchase price. The contract was not recorded.
    Defendant, upon the contractor's default, took charge of the work and
    took possession of all tools and machinery, including such trenching
    machine, and after completion of the work sold such machine. Held, that
    defendant was in no sense a purchaser in good faith of the machine, as,
    the contractor not having purchased the machine until after the contract
    of indemnity was made, defendant was in no way induced to execute the
    bond by the contractor's supposed ownership of the machine.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec.
    Dig. ☞473.]

3. CHATTEL MORTGAGES ☞138—CONDITIONAL SALES—RIGHTS OF MORTGAGEES.
    The contention of defendant that its rights were superior to those of
    plaintiff, on the theory that it became a mortgagee in good faith, with-
    out notice of plaintiff's reserved title, and that by taking possession it
    acquired the legal title and cut off plaintiff's undisclosed interest, was
    unsound, as, though a chattel mortgage passes the legal title subject to
    defeasance by payment of the secured debt, the contractor never owned
    the legal title, and defendant only acquired the interest of the contractor,
    or a right to acquire the legal title by paying the purchase price.
    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 228–
    236; Dec. Dig. ☞138.]

4. SALES ☞480—CONDITIONAL SALES—CONVERSION BY THIRD PERSON—DAM-
    AGES.
    A party, who took possession of machinery sold conditionally, sold it,
    and appropriated the proceeds, was not liable to the conditional seller for
    expenses incurred by such seller in its unsuccessful endeavors to recover
    possession of the machine.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1439–1448; Dec.
    Dig. ☞480.]

At Law.   Action by the G. W. Parsons Company against the United
States Fidelity & Guaranty Company of Baltimore, Md.   Judgment
for plaintiff.

POLLOCK, District Judge.   The facts are substantially as follows:
In the month of May, 1913, a copartnership doing business under the
firm name of Frank S. Misho & Co., at Seattle, in the state of Wash-

ington, was awarded the work of constructing a sewer in the city of Edmonton, province of Alberta, Canada, and on May 22, 1913, a contract was entered into between the city and the contracting company (hereinafter called Misho & Co.) for the doing of the work. In order to qualify itself to undertake the performance of this public work Misho & Co. were compelled to and did give to the city a surety bond conditioned on the faithful performance of the contract. This bond was made by Misho & Co. as principal and defendant as surety, and was procured to be made by defendant on an agreement of indemnity entered into by Misho & Co., which, among other things, provides as follows:

"And for the better protection of the said company, we do, as of the date hereof, hereby assign, transfer, and convey to it, the said United States Fidelity & Guaranty Company, all our right, title, and interest in and to all the tools, plant, equipment, and materials of every nature and description that we may now or hereafter have upon said work, or in, on, or about the site thereof, including as well materials purchased for or chargeable to said contract, which may now be in process of construction, or storage elsewhere, or in transportation to said site, hereby assigning and conveying, also, all our rights in and to all subcontracts, which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials, and subcontracts, and enforce, use, and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect, as of the date hereof, should we fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on our part under the said contract. In further consideration of the execution of the said bond, we do hereby agree, as of this date, that the said United States Fidelity & Guaranty Company shall, as surety on said bond, be subrogated to all our rights, privileges, and properties as principal and otherwise in said contract, and we do hereby assign, transfer, and convey to said company all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable to us at the time of such breach or default, or that may thereafter become due and payable to us on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys, and the proceeds of such payments and properties, shall be the sole property of the said United States Fidelity & Guaranty Company, and to be by it credited upon any loan, cost, damage, charge, and expense sustained or incurred by it as above under its bond of suretyship."

Misho & Co. did not keep and perform their contract with the city, but made default therein, with the result a representative of defendant proceeded to the city of Edmonton, took charge of the work of constructing the sewer, also took possession of all tools, appliances, apparatus, machinery, etc., of Misho & Co. there found, and completed the work of constructing the sewer to the satisfaction of the city, but at a very considerable loss to itself. Among the tools, apparatus, and appliances left by Misho & Co. on the job when the company abandoned its contract was the trenching machine in dispute in this case. The history of this machine may be stated as follows:

As Misho & Co. were in need of a machine of this character in the performance of the contract with the city, a soliciting agent of plaintiff entered into a contract with Misho & Co. at Edmonton for its purchase, subject, however, to the approval of plaintiff at the city of New-

ton, this state, the home and principal place of business of plaintiff. This contract was approved by plaintiff at the city of Newton June 3, 1913. Among other things it is therein provided the purchase price of the trenching machine was the sum of $7,000, $1,500 cash, which was paid, balance evidenced by three promissory notes, dated June 11, 1913, one for $1,300 and two for $1,350 each, and a check for $1,-500, which notes and check were not paid, except a credit thereon of $300. Delivery of machine was made f. o. b. Newton. By the terms of this contract title to the trenching machine was reserved in plaintiff until payment made, as follows:

"It is expressly agreed that the above specified machine and property shall be and remain the property and subject to the order of the first party until paid in full, and that if promissory notes are given for the purchase money, or any part thereof, that the giving of the same, or any part payment thereon, shall not divert the title of the party of the first part, until said promissory notes and said purchase money is paid in full. Nor shall any payment on account and the receipt thereof divert such title until the whole purchase price is fully paid, and all payments less than the whole sum shall be considered as being for the rent of such machinery and for damages thereto by wear."

The machine was shipped from Newton to Edmonton, the freight paid by Misho & Co., and it was used by that company in the work of constructing the sewer until such work was abandoned by Misho & Co., when it was left in the trench, where found by defendant when it assumed control of the work, and it was used by defendant in the doing of the work until completed, when it was sold by defendant for the sum of $3,500, and the account of defendant with Misho & Co. was credited with such amount. The contract between plaintiff and Misho & Co. for the sale and purchase of the machine was neither filed nor recorded in the appropriate office in Jasper county, this state, nor in the province of Alberta, Canada.

The question presented on this record for decision is: Which has the better right to the machine—plaintiff, under its contract of sale reserving title until payment of purchase price made, or defendant, under its contract of indemnity with Misho & Co? The plaintiff claims the value of the machine to the extent, but not in excess of, the unpaid purchase price of $5,500, with interest thereon to date, less a credit of $300 admitted, and the reasonable expenditures by it made in endeavoring to recover the machine, not in excess of $200. Defendant bases its right to the machine and its proceeds on its contract of indemnity with Misho & Co. The case has been heard and stands submitted for decision on the evidence and briefs and arguments of counsel for the respective parties. Of necessity, the decision of the controversy thus presented must rest on the legal effect to be given to the contract of sale and purchase made between plaintiff and Misho & Co., on the one hand, and the contract of indemnity made between defendant as surety for Misho & Co. on the other.

[1] Turning, now, to the provisions of the contract of sale and purchase made between plaintiff and Misho & Co., it is quite too clear for argument it in ample terms expressly reserves the title to the machine in dispute in plaintiff until full payment shall have been made, as stipulated in the contract. That this contract is in all its parts valid

and enforceable between the parties is not only conclusively settled by authority, but is in effect conceded by defendant. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; Warner v. Johnson, 65 Iowa, 126, 21 N. W. 483; Zacharia v. Cohen Co., 140 Iowa, 682, 119 N. W. 136; Cline v. Russell, West Law Rep. (Canada) vol. 10, 666.

On what valid ground, therefore, does or can defendant contend its rights to the machine in question rise higher than the rights of Misho & Co. by its contract with plaintiff? As I understand the contention made by defendant in this respect, it is by reason of the provisions of the contract of indemnity above quoted, through which it claims to occupy the relation to the machine of a purchaser in good faith or subsequent mortgagee without notice of plaintiff's interest in the machine, because the contract under which title is reserved to plaintiff until full payment made was not recorded, to give constructive notice, and it did not have actual knowledge or notice of such right.

[2, 3] This brings me to a consideration of the language above quoted from the agreement, by which Misho & Co., in indemnifying defendant, attempted to pledge all tools, apparatus, machinery, materials, etc., to defendant. This contract reads:

"And for the better protection of the said company we do, as of the date hereof, hereby assign, transfer, and convey to it, the said United States Fidelity & Guaranty Company, *all our right, title, and interest in and to all the tools, plant, equipment, and materials of every nature and description,*" etc., including the machine in question.

However, as Misho & Co. purchased the machine from plaintiff long after the contract of indemnity on which defendant relies was made, it is clear the making of the bond by defendant was not in any manner induced by any supposed ownership of the machine by Misho & Co.; hence defendant is in no sense a purchaser in good faith. Holt v. Henly, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767. The logic of defendant's argument is based on the following premise: It contends, by virtue of the covenants of the contract of indemnity made it by Misho & Co., it became a mortgagee in good faith of the machine thereafter acquired from plaintiff without notice or knowledge of plaintiff's reserved title contract; hence, at the time it took possession of the machine under its mortgage, it took the legal title thereto, and the undisclosed interest of plaintiff was thus cut off and destroyed. The fallacy of this contention I conceive to lie in the fact the major premise on which it rests is unsound. A chattel mortgage of personal property passes the legal title to the mortgagee, subject to defeasance by payment of the debt secured. In this case the trenching machine in dispute was not in existence at the time the contract of indemnity was made by Misho & Co. to defendant; hence defendant assumed no risk and incurred no liability in the making of the bond to the city, acting in reliance on the assumption of ownership of the machine by Misho & Co. It follows, therefore, defendant is in no sense a purchaser in good faith for value without notice, as has been seen.

When Misho & Co. thereafter purchased the machine and took it into possession, it did not take the legal title thereto, for title was ex-

pressly reserved by plaintiff under its contract of sale to Misho & Co. Hence it follows defendant did not and could not receive the legal title to the machine by taking possession from Misho & Co., for Misho & Co. at no time had this legal title. What defendant did receive on taking possession of the machine under the express terms of its contract of indemnity was all the right, title, and interest which Misho & Co. took from plaintiff. As Misho & Co. at no time took or had title to the machine in controversy, because this was expressly reserved to plaintiff, it had no interest in or right to the machine in question, except an interest to the extent to which it had paid the purchase price of the machine, or had paid freight for its shipment. In other words, the entire right, title, and interest of Misho & Co. in the machine rested in its right to use the machine in its possession and to pay the remainder of the purchase price to plaintiff, and thus acquire the title reserved by plaintiff from it until payment made. Hence it is clear all the right, title, or interest possessed by Misho & Co., which passed to defendant under the express terms of the contract of indemnity above quoted was such, and only such, as Misho & Co. possessed at the time defendant took possession of the machine in question. That is to say, the right to pay the remainder of the purchase money according to the terms of the contract, and interest thereon, less the credit of $300 conceded by plaintiff. In default of such payment plaintiff was entitled to recover the machine, if found in possession of defendant, in the same manner and to like effect as though it had remained in the possession of Misho & Co.

As defendant had sold the machine and appropriated the proceeds to its own use, plaintiff must have judgment for the value of the same at the time it came into the possession of defendant, not, however, exceeding the amount of its unpaid demand, together with interest thereon, less the sum of $300 credit admitted by plaintiff in repairing the machine, at the time and place it was appropriated by defendant to its own use. Considering the evidence of all of the witnesses, the condition of the machine at the time, the special service it is designed to perform, its distant location, and all other matters and things, I am of the opinion the sum of $5,000 was its reasonable value when defendant took possession.

[4] It follows the plaintiff must have judgment for $5,000 and costs of this action. I do not allow plaintiff its expenses incurred in its endeavor to possess itself of the machine. It was not successful in this attempt.

It is so ordered.