# MORRIS *v.* COHN.

Decided October 24, 1891.

55  401
70   42

1. *Keeping cattle in Indian country—Conditional sale.*

   A contract for the sale of cattle by a citizen of Arkansas to a Choctaw In-
   dian whereby the cattle were to be delivered at the vendee's place of
   residence in the Choctaw Nation, the title to remain in the vendor until paid
   for, does not contravene a law of the Choctaw Nation which prohibits a
   non-citizen from owning, controlling or holding stock in that country, and
   prohibits a citizen from evading or assisting any non-citizen to evade the
   law by a sham sale, or sale without consideration, of stock to be held by
   such citizen for the use and benefit of such non-citizen, within the limits
   of such Nation.

2. *Driving cattle into Indian country.*

   Rev. Stat. U. S., sec. 2117, which imposes a penalty on any person "who
   drives any horses, mules or cattle to range or feed on any land belonging
   to any Indian or Indian tribe, without the consent of said tribe," is not
   violated by driving cattle into the Indian country for delivery to one of
   its citizens under his contract to purchase them.

3. *Conditional sale—Refusal to accept—Damages.*

   Plaintiffs and defendant executed a contract by which the latter gave his
   note, and the former agreed within six weeks to deliver to him 300 head
   of cattle at specified prices, the title to remain in plaintiffs until the note
   should be paid.  At the appointed time plaintiffs offered to deliver the
   cattle, but defendant refused to receive them.  Without notifying defend-
   ant that they kept the cattle for him, plaintiffs, after a delay of four
   months, and after more than one-third of the cattle had died, brought suit
   to recover the contract price and money expended in feeding the cattle.

   *Held*, while defendant waived his right to have the cattle actually delivered
   by refusing to receive them, the offer of plaintiffs to deliver the cattle
   under the contract did not of itself render the sale absolute, since the
   title and possession both remained with plaintiffs.

   *Held*, also, if plaintiffs could have elected to treat the sale as absolute and
   sue for the contract price, the right was lost by failure to exercise it with-
   in a reasonable time.

   *Held*, accordingly, the measure of the damages to which plaintiffs are enti-
   tled is the difference between the contract and market price of the cattle
   at the time of the offer to deliver them.

APPEAL from *Sebastian* Circuit Court, Fort Smith Dis-
trict.

JOHN S. LITTLE, Judge.

S C—26

Cohn & Harrington sued Morris, first, upon a note given for the purchase of 300 head of cattle; and second, upon an account for money expended in keeping the cattle.

Defendant filed an answer containing three paragraphs:

1. He alleged that there was no consideration for the note sued on; that he had agreed with plaintiffs to purchase the cattle, but they did not comply with their contract to deliver them to him.

2. He denied that plaintiffs took care of any cattle or expended any money for him.

3. He alleged that he is a Choctaw Indian; that, under his contract with plaintiffs, they were to deliver the cattle to him at his place in the Choctaw country; that plaintiffs are white men and citizens of the State of Arkansas, and that they intended when they made the contract, to drive the cattle through and over the lands of the Choctaw Indians to defendant's place and there leave them, in his possession, but as their property, until the note was paid off, to range and feed on the lands of the said Choctaw Indian, from whom plaintiffs never at any time had any consent so to do; that the contract was in violation of chapters 3 and 4, of title 28, of the revised statutes of the United States, and also of the laws of the said Indians, as well as against public policy, and that the note and contract were wholly void.

The contract referred to in the answer is as follows:

"This contract made this 18th day of October, 1888, by and between M. S. Cohn and John Harrington, parties of the first part hereto, and Adam G. Morris, party of the second part hereto, witnesseth: That the said parties of the first part have agreed to sell and deliver to the party of the second part, one hundred head of yearling cattle, one hundred head of two-year-old cattle, one hundred head of cows and calves, at the price of $7.50 for the yearlings, $11.50 per head for the two-year-olds, and $17.50 per head for the cows and calves, said cattle to be delivered within six weeks from this date, at said Morris' place in the Choctaw Nation, Indian Territory. The party of the second part has executed

his note of hand to said parties of the first part, of even date herewith, for the sum of thirty-six hundred dollars, payable January 1, 1889, said note being given for the purchase price of said cattle as aforesaid. It is expressly agreed and stipulated, that the title of each and every head of cattle delivered in pursuance of this contract shall be and remain in the parties of the first part until said purchase note is fully paid and satisfied.

" Witness our hands this 18th day of October, 1888.

[Signed]   " M. S. Cohn,

" John Harrington,

" A. G. Morris."

Cohn testified that the note and contract were executed on the 18th day of October, 1888 ; that they immediately began collecting the cattle, and by the last of November following had them ready for delivery. That about that time he received the following letter :

" *Mr. M. S. Cohn :*

" Sir—I will have to inform you that I cannot receive them cattle now, as the laws of our country will not allow me to bring in cattle in here. Now, I can't *doe* anything with them before spring, if then, so you need not send them.

" Yours,

[Signed]                              " A. G. Morris."

That, in a day or two after receiving the letter, he and Harrington went to Morris' house, and told him they had the cattle ready to deliver. That he refused to receive the cattle, and said he thought his letter ought to be sufficient. After a while he said he might take them next spring. Witness told him it would be expensive to keep them all winter. Morris said it would not cost much. This interview was before December 1st, 1888. Witness again saw Morris in Fort Smith in the spring of 1889, and asked him to take the cattle, and he refused. From December 1, 1888, until the suit was brought, April 8, 1889, the expense of feeding the cattle was $525. During that period 118 of the cattle had died. Witness is a citizen of Arkansas and a white man. When

the contract was entered into, he intended to drive the cattle mentioned therein through the Choctaw Nation and deliver them to Morris at his residence within the time mentioned in the contract.

The verdict of the jury was in favor of the plaintiffs for the sum of $4000. Defendant has appealed. The grounds of his exceptions are stated in the opinion of the court.

*Rogers & Read* for appellant.

1. Plaintiffs could not elect to treat the contract as an absolute sale and sue for the purchase price so long as they retained the title and possession of the property in themselves. They were entitled to recover damages only, and the measure is the difference between the contract price and the market price on the day when the vendee ought to have accepted the goods. Benj. on Sales, p. 652-3; 8 Q. B., 604 9; Chitty on Cont., 11 Am. ed., 1331; 1 Bush, 621; 6 Bush, 463; 50 Ind., 303; 4 Col., 411; 12 Ind., 125; 39 Mo., 208; 73 Penn., 365; 50 N. H., 307; 30 Wis., 290; 62 Ind., 140; 94 *id.*, 49; 50 *id.*, 303.

2. The contract was invalid, in violation of the laws of the Territory and of the United States. Art. 38, Choctaw Treaty, July 10th, 1866; Rev. U. S. Stat., sec. 2117; 12 How., U. S., 79; 3 Barn. & Ad., 231; 14 Ohio St., 331; 30 N. H., 540.

*Sandels & Warner* for appellees.

1. By his action Morris waived a delivery of the cattle at his home in the Nation. Where one dispenses with or prevents performance of a contract, he cannot take advantage of the non-performance by the other. Field on Damages, sec. 299; 15 Penn. St., 135-6; 100 N. Y., 127; 26 Mich., 173; 40 Ill., 371; 167 Mass., 362; Wharton on Cont., secs. 604, 995; 105 Mass., 280; 1 Bibb, 379; 2 *id.*, 217.

2. The American rule is: "The vendor may keep the property as his own and sue for the difference in price; he may sell the property and recover the difference; or he may treat the transaction as a sale and sue for the agreed

price." 48 Ark., 166; Field on Damages, sec. 299; Story, Sales, secs. 436-7; 3 Parsons on Cont., 208–210; Sedg. on Dam., 282; 15 Wend., 493; 53 N. Y., 426; 60 N. Y., 627; 2 Benj. on Sales, 1165; 44 N. Y., 72; 5 Johns., 395; 30 *id.*, 555: 72 *id.*, 595; 84 N. Y., 549; 49 Ia., 16; 48 Mich., 218; 82 Ill., 524; 118 Mass., 242; 127 *id.*, 339; 135 *id.*, 172; 10 Bush, 632; 3 Met., 557; 33 Mo., 391; 25 Ohio St., 490; 46 Pa. St., 177.

3. The validity of the contract is not affected by the laws of the United States or of the Territory. 43 Ark., 353; 48 Ark., 165. The title to the cattle passed to Morris on performance of the condition. Neither the letter or spirit of the laws were violated.

*Clayton, Brizzolara & Forrester* and *Sandels & Warner* for appellee, on motion for rehearing.

The question upon which this cause was reversed was never raised nor considered as material by appellant, save by argument in this court. It was not raised by the instructions asked by defendant. The defendant contended that there must be an actual delivery, and that in case of vendee's refusal plaintiffs had no right of election—only the right of action for damages. Plaintiffs contended (1) that when vendee refused to receive the cattle he waived a delivery; (2) that upon vendee's refusal to receive, plaintiffs had the right of election of three remedies. This was the only issue. Errors not complained of in the trial court cannot be assigned here. 51 Ark., 212; *ib.*, 351; *ib.*, 441; 50 *id.*, 348; 49 *id.*, 253; 44 *id.*, 103. A party moving for a new trial abandons previous exceptions unless they are incorporated in his motion. 39 Ark., 423.

*Rogers & Read* contra.

The question of the failure to give Morris "notice that they held the cattle for him and subject to his order" was raised by objections to instructions. No effort was made to prove *such notice*, and the question could not be raised in any other way than by objections to instructions on that subject.

MANSFIELD, J. The questions which it is necessary to decide on this appeal are raised by the defendant's exceptions to the charge of the court. This, so far as it is material to state it, was to the effect (1) that the contract for the sale of the cattle was not in violation of either of the laws mentioned in the answer, and was valid ; (2) that if the plaintiffs were ready and prepared to deliver the cattle according to their contract, and, before the expiration of the time within which such delivery was to be made, the defendant notified them that he would not receive the cattle, then after such notice no formal offer to deliver was necessary, and the plaintiffs could treat the transaction as a sale, and recover the contract price ; (3), that if the verdict was for the plaintiffs, they were entitled to recover, in addition to the contract price, the reasonable cost of keeping the cattle from the date at which the suit was commenced.

1. Keeping cattl in the Indian country.

The law of the Choctaw Nation, which it is insisted the contract in question contravenes, was read in evidence. The first section provides that "no non-citizen shall be allowed to own, control, or hold any stock of any kind" within the limits of that country except under permit, and then not exceeding a special number for his own use and such as may be kept in an inclosure. The second section provides that any non-citizen who shall violate the preceding section "shall be reported by the sheriff of the county wherein said non-citizen may be located," for removal under the laws of the United States. The third section makes it a misdemeanor for any citizen of the Nation to evade or assist any non-citizen to evade the law "by sham sale or sale without a valuable consideration, of any stock to be held by * * * such citizen for the use and benefit of such non-citizen, within the limits of said Nation." We are without information as to the construction which has been given to this statute in the Choctaw Nation. But, as it appears to us, the only purpose of its enactment was to prevent that country from being made a grazing ground for the stock of people who have no right of citizenship within its borders. The first section evi-

dently relates to " non-citizens " located in the territory and keeping stock there. This is indicated by the language of the second section. The third section applies to citizens of the Nation who assist non-citizens to evade the statute by the means in that section mentioned. There is no provision of the statute which can be reasonably construed to place any restraint upon the right of a Choctaw to purchase cattle for his own use in the States, and to take them into the Nation when purchased. And there is nothing in the form of the contract entered into by the parties to this suit, or in the evidence, to indicate that a " sham sale," or " sale without a valuable consideration," was made or intended; nor to show that the cattle bargained for were in any sense to be held by the defendant for the use and benefit of the plaintiffs. The contract was for a conditional sale; but if it had been completed, it would have invested the defendant with an interest in the cattle which he could have sold, and with the exclusive right to their possession until he made default in the payment of the purchase money. · They were to be delivered to him for his own use and benefit, and we think the conditional sale would have enabled him to hold them in the Choctaw Nation, consistently with its laws. *McRea* v. *Merrifield*, 48 Ark., 160; *Dedman* v. *Earle*, 52 Ark., 164; *Nattin* v. *Riley*, 54 Ark., 30.

The Federal statute referred to in the answer imposes a penalty on any person " who drives any stock of horses, mules or cattle to range or feed on any land belonging to any Indian or Indian tribe without the consent of said tribe." Rev. Stat. U. S., sec. 2117. The purpose of this act was obviously the same as that of the Choctaw statute; and neither of them is violated by driving cattle into the Indian country for delivery to one of its citizens under his contract to purchase them. There was no error then in the court's ruling as to the validity of the contract.

2. Federal statute against driving cattle in Indian country construed.

The note in suit and the writing exhibited with the answer are to be taken as constituting one contract. Thus considered, they show that a present sale of the cattle was not

3. Damages for failure to comply with conditional sale.

contemplated, and that the intention of the parties was to agree upon the terms and conditions of a sale to be completed in the future. There is no evidence that the plaintiffs were, at the date of the contract, the owners of the property they bound themselves to deliver; and it may be inferred from what appears in the record that the cattle were subsequently obtained. The note was not delivered or received as a payment of the price agreed upon. This is conclusively shown by the stipulation that the title should not pass until the note was fully paid. The title to the cattle could not then have passed to the defendant, even conditionally, before the time when the plaintiffs offered to deliver them.

By his written notice to the plaintiffs and his subsequent oral declaration made to them that he would not receive the cattle, the defendant waived his right to have the property actually and formally offered for his acceptance. And the fact that such offer was not made can avail nothing as a defense to this action. 1 Whart., Cont., sec. 604.

But the mere offer of the plaintiffs to perform the contract on their part, although it is to be considered in this case as a tender of the cattle for delivery, did not of itself complete the sale. Both the title and the actual possession of the property remained with the plaintiffs. And the evidence does not show that the defendant was ever informed that the cattle were held subject to his order and would be treated as his property. It is argued that his non-acceptance entitled the plaintiffs to retain the property as belonging to him and sue for the contract price. If this be conceded, it was certainly incumbent upon them to inform him of the fact that they had elected to take that course. And it was too late to make that election by commencing this suit several months after the defendant's breach of the contract, and after a considerable number of cattle had died.

The jury were instructed that, on the defendant's refusal to receive the cattle, the plaintiffs had the right to treat the transaction as a sale. But there was no evidence to show

when they elected thus to treat it, or that they had ever done so, otherwise than by bringing this action. They could not make an actual delivery of property which the defendant would not accept. But they could have done what might have been treated as a constructive delivery. They could have placed the property at his disposal and notified him that it would be held for him. The record discloses no act or declaration on their part to this effect. And with both the title and the possession of the cattle retained by the plaintiffs, we hold that their remedy was to sue for the actual damages sustained by the defendant's non-acceptance. 5 Wait's Actions and Defenses, p. 608; 2 Sedg. on Damages, sec. 750.

The measure of such damages is the difference between the contract price and the value of the cattle at the time of the offer to deliver them.

The second and third clauses of the court's charge (as we have recited it in this opinion) were erroneous. And for this error the judgment is reversed, and the cause remanded for a new trial.

[At the hour of adjourning for the May term, 1891, an argument was submitted in support of a motion previously made by appellees for a rehearing. In order that the argument might be properly considered, the judgment of reversal previously rendered was set aside. Upon rehearing the opinion of the court was, on January 30, 1892, delivered by]

MANSFIELD, J. In the original brief of counsel for the appellees it was stated that one of the questions presented by the record of this case was, whether the plaintiff could sue for the contract price. It is now argued, in support of the motion for a rehearing, that the opinion formerly delivered reverses the judgment below for an error not assigned in the motion for a new trial. The court's charge to the jury consisted of four instructions, and the record shows that the giving of each instruction was separately stated as a ground for the defendants' application for a new trial. On the facts

recited in the first, second and third instructions, the jury were charged that the plaintiffs were entitled to recover the contract price of the cattle and also the cost of keeping them from the date of bringing this suit. Our ruling was that on such facts the recovery of the plaintiffs should be limited to the actual damages sustained by the defendants' non-acceptance of the cattle. And that the measure of damages fixed by the court's charge was incorrect. As the opinion states that the reversal was because of the error thus indicated in the court's charge, we think it sufficiently appears that our decision was made upon a question properly presented by the defendants' appeal.

In the argument on which the cause was submitted, the contention of the appellees was that the facts of this case warranted them in pursuing either one of the three remedies stated as follows: (1) They could retain the property for the vendee and sue him for the price. (2) Acting as agent for the vendee they could sell the property and recover the difference between the price received for it and the price agreed to be paid. (3) They could keep the property as their own and recover the difference between the market price at the time and place of delivery and the contract price. It was admitted, however, that the decisions are not in harmony as to the measure of damages in actions like this, and that some of the American courts have followed the rule, laid down by Mr. Benjamin and supported by the weight of authority in England, that for the vendee's non-acceptance of goods the vendor " can in general only recover the damages he has sustained, not the full price of the goods." Benjamin on Sales (Bennett ed.,) p. 710 The doctrine contended for by the appellees is approved by Mr. Parsons in his work on Contracts. 3 Parsons on Contracts, 7 ed., 210. Mr. Tiedeman, in his treatise on Sales, also says that the prevailing rule in America seems to be that where the goods have been tendered in strict conformity to the contract and refused, the seller may consider them the property of the buyer and recover the contract price. But, after

referring to the rule obtaining in the English courts, he adds
that "it is very likely that most of the American cases are
really exceptions to the general rule which are recognized
because on account of the peculiar circumstances of the par-
ticular case a judgment for the difference between the mar-
ket value and the contract price would not be an ample
remedy." Tiedeman on Sales, sec. 333. In Wait's Actions
and Defenses the general rule deduced from the decisions is
that where the seller offers to perform the contract but the
property in the goods still remains in him, his only remedy
for the buyer's non-acceptance is to sue for the actual dam-
ages thereby sustained. Vol. 5, p. 608. In *Harkness* v.
*Russell*, 118 U. S., 663, Mr. Justice Bradley, speaking of ex-
ecutory and conditional contracts for the sale of personal
property, said: "Upon an agreement to sell, if the pur-
chaser fails to execute his contract, the true measure of
damages for its breach is the difference between the price of
the goods agreed on and their value at the time of the breach
or trial." Whether in our judgment such is the rule estab-
lished by the authorities, we did not find it necessary to say.
And the opinion does not indicate, as counsel have assumed,
an approval of the rule contended for by the appellees.
With reference to their contention, we said in substance that
if it were conceded that, on the defendant's non-acceptance
of the cattle, a right accrued to the plaintiffs to treat the
contract as an absolute sale and sue for the contract price,
it was incumbent upon them to inform the defendant of their
election to pursue that course. We were unable to find in
the record any evidence that such election was made prior
to the day when the suit was commenced, and we held that
it was then too late to make it. But we did not rule, as
counsel have stated in argument, that the plaintiffs might
have recovered the contract price if they had given a formal
notice of their purpose to hold the cattle as belonging to the
defendant. The evidence does not show that any notice
whatever of such purpose was given, nor that anything was
done which could be treated as a constructive delivery of

the cattle. Without such delivery, it was clear to us that no title had vested in the defendant at the time the suit was brought. And as he was not then in possession of the property, the election of the plaintiffs to treat the sale as absolute could not, we thought, have the effect to divest them of title. But the acquisition of the title to the cattle was the consideration for the execution of the note sued on; and the right to recover the amount of the note as a debt did not exist unless the sale had become absolute. *Minn. Harvester Works* v. *Hally*, 27 Minn., 495; *Third National Bank* v. *Armstrong*, 25 Minn., 530; *Hine* v. *Roberts*, 48 Conn., 271; *Bailey* v. *Hervey*, 135 Mass., 172; *McRea* v. *Merrifield*, 48 Ark., 160; *Bailey* v. *Smith*, 43 N. H., 141.

In an instruction given by request of the plaintiff the jury were told that if their verdict was against the defendant, it should embrace the costs of keeping the cattle after the day on which the suit was brought. It thus appears that in the trial court there was no contention that the cattle became the property of the defendant at an earlier date. But we understand the contention now to be that the mere offer to deliver them was equivalent to a declaration that they would be held for the defendant. But that offer was made under a contract by the terms of which the delivery of the cattle was to be only conditional; and if the defendant had accepted them, the title would have remained in the plaintiffs who had expressly reserved it until the payment of the purchase money. *Herring* v. *Hoppock*, 15 N. Y., 411.

The case of *McRea* v. *Merrifield*, 48 Ark., *supra*, is cited to sustain the ruling of the circuit court. That was an action of replevin, brought by the original vendor against a purchaser from his vendee, to recover property delivered under a conditional sale. No question such as arises here was ruled upon there. It was said, however, by Chief Justice Cockrill, who delivered the opinion of the court, that although the absolute relation of debtor and creditor is not created by a conditional sale, the seller may, when the con-

dition is broken, "elect to reclaim his property, or treat the
transaction as a sale and bring an action for the agreed price."
That such is the law, we entertain no doubt. But it was not
said that the rule stated by the Chief Justice was applicable
to cases where the actual possession of the property remains
with the vendor. Where it has been delivered to the ven—
dee, the vendor waives his right of reclamation and affirms.
the contract as an absolute sale by suing for the agreed
price. *Bailey* v. *Hervey,* 135 Mass., 172. The vendee hav-
ing the possession of the property and the title being thus .
passed to him by the affirmance of the sale, he is without .
ground on which to resist a recovery of the price. He has
himself affirmed the sale by enjoying the use of the property
and cannot in such case complain that the vendee's elec-
tion to sue for the price has not been made sooner. But-
where the vendor has never parted with the possession of
the property, he waives no right to reclaim it by suing for
the price, and his suit is not therefore an affirmance of the-
sale. Without such affirmance the promise to pay the price
would be without consideration to support it, and the price-
could not be recovered as a debt. We might then have-
placed our ruling upon the ground that there was never any
change in the actual possession of the cattle. But it was-
thought unnecessary to go beyond holding that if the plain-
tiffs had a right of election to treat the transaction as a sale,
it was waived by the failure to exercise it within a reasona-
ble time. If, as their counsel insist, two or more inconsist-
ent courses of action were open to their adoption, the
nature of the property required them to elect without un-
necessary delay which they would pursue. *Bailey* v. *Her-
vey,* 135 Mass., *supra.* See also *Camp* v. *Hamlin,* 55 Ga.,
259. If, without notice that the cattle were held at the de-
fendant's risk, the plaintiffs could keep them for over four
months after the refusal to accept them, and sue for the
contract price after more than one hundred of them had
died, we can see no obstacle to a suit for the price at-
the end of a year and after the loss of the entire herd.

The motion for a rehearing is overruled, and the judgment of reversal heretofore set aside will be re·entered.